## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:23-cv-1349

RICHARD GRIGSBY, CHERYL GRIGSBY,
and ROCKY MOUNTAIN MEMORIES, INC.

      Plaintiffs,

v.

ESTES PARK, Colorado,
a Colorado Municipal Corporation

      Defendant.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

      Plaintiffs, Richard "Rick" Grigsby, Cheryl Grigsby, and Rocky Mountain Memories, Inc.

(collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against

Defendant the town of Estes Park, Colorado ("Defendant" or "Town"), allege as follows:

### INTRODUCTION

1.  Local Title 5 Business Regulations and Licensing of the Estes Park Municipal Code
    ("Title 5"), as recently amended by Ordinance 02-22 ("Ordinance 02-22") on March 22,
    2022, has morphed into an extraordinary act of government overreach and is not
    conferred by state statute or otherwise by necessary implication.

2.  Title 5, as amended, is arbitrary in its very nature as it impacts only those property
    owners who rent their vacation homes for 30 days or less ("short-term rentals" or
    "STRs") but not those who rent their homes for one additional day (30 days or more or
    "long-term rentals" or "LTRs").

3.  Title 5, as amended, is a violation of Equal Protection and Due Process, on its face and as implemented, as it applies to homeowners in the Town and is further a violation of Equal Protection, Due Process, the Contracts Clause, and the Commerce Clause as applied to Plaintiffs.

### TITLE 5, AS AMENDED BY ORDINANCE 02-22

4.  The March 22, 2022 Ordinance 02-22 amendment to Title 5 imposed an annual "vacation home workforce housing regulatory linkage fee" ("Impact Fee") (Title 5.20.120) in the amount of $1,390 on annual Vacation Home Rental Registrations ("Vacation Home Rental License") (Title 5.20.030(6)).  The annual fee commenced January of 2023, with the yearly amount to be adjusted annually for inflation. The Impact Fee is only charged to those who rent their homes for 30 days or less and is levied against existing licensed vacation homes as a condition of license renewal. The Impact Fee does not equally distribute the costs of workforce housing among the persons and businesses benefited thereby.  The fee was not first submitted to a vote of the registered electors. The collected fees are to be deposited in a to be established "workforce housing enterprise fund" to fund Defendant's unspecified, vague, "housing efforts," roughly described as construction or acquisition of new housing units, purchasing deed restrictions on existing units, rental assistance programs, and/or defraying the costs to the Defendant of administering such programs.  No details other than a vague reference to what the monies were to be used for is provided.  A new "Workforce Housing Enterprise" is to "administer" the program and establish an Enterprise Fund (Title 5.21.060).

5.  The workforce housing need in the town of Estes Park is estimated to be in the hundreds of millions of dollars and affects almost all sectors of the economy in the Estes Valley.

See <u>The Estes Valley Housing Needs Assessment & Strategic Plan, Root Policy Research</u>, January 2023, page 44 stating "2,720 units will be needed by 2030 to address the current shortage of workforce housing and forecasted employment demand."  Hotels, accommodation units, grocery stores, gas stations, restaurants, gift shops, Rocky Mountain National Park, the town of Estes Park and effectively all other town business license holders rely on, directly or indirectly, seasonal workers to tend to the tourists who visit in the summer.  Tourism is the main economic driver of the Town with over four and a half million visitors visiting Rocky Mountain National Park each year. Despite this very large problem of a shortage of workforce housing, that affects almost all business sectors in the Estes Valley, Defendant only placed the Impact Fee, on one narrow class of small business – those who rent their licensed vacation homes for less than 30 days.  Neither, those who rent for one more day (30 or more days) nor all other business sectors are affected.   Upon information and belief, the Impact Fee will only generate $710,290 in 2023 (calculated as 511 vacation homes charged the fee of $1,390), an amount wholly inadequate to solve overall housing shortages or remedy workforce housing, specifically.  Workforce housing is a statewide issue, and its burden should be borne by the public at large.

6.  Defendant is a Colorado statutory town and has long been a tourist destination.  Statutory municipalities possess only those powers that are expressly conferred by statute or exist by necessary implication.  Statutes that grant statutory towns powers are strictly construed and any doubt as to a statutory municipality's power must be resolved against it.  (*Estes Park Chamber of Commerce v Town of Estes Park*, 199 P.3d 11 (2007), *City of*

*Sheridan v City of Englewood*, 609 P.2d 108, 109 (1980), *City of Aurora v Bogue*, 489

P.3d at 1296 (1971)).  Title 5, as amended, is not expressly authorized by state statute.

7.   Defendant has the power to make its own ordinances, however, the ordinances must not

be inconsistent with the laws of the state of Colorado.  C.R.S. 31-15-103.  Defendant's

power to establish terms for business licensing fees, workforce housing authorities, and

impact fees for capital facilities is limited.  The Ordinance is inconsistent with

preempting Colorado statutory law regarding the establishment of capital facility impact

fees (C.R.S 29-20-102 to 29-20-104.5), the establishment of workforce housing impact

fees (C.R.S 29-1-204.5), the municipal power to regulate business and occupations via

licensing (C.R.S.31-15-501(c)), and the legislative declarations on Regulatory

Impairment of Property Rights (C.R.S. 29-20-201 et. seq.).   Defendant currently levies

only one other impact fee ("Fire Protection Fee").  The Fire Protection Fee is directed to

the Estes Valley Fire Protection District and is collected under an Intergovernmental

Agreement (IGA).  While towns have the power to make their own ordinances provided

they are not inconsistent with the laws of the state of Colorado (C.R.S. 31-15-103), the

Fire Protection Fee is specifically authorized by Colorado statutes § 29-20-104.5 and

§32-1-1002(1)(d.5) for special fire protection, rescue, and emergency services districts

such as the Estes Valley Fire Protection District.  This is an important distinction from

the Impact Fee related to vacation homes because the Defendant is a statutory town and,

as such, merely has the authority granted it by state statute or by necessary implication.

8.  The state legislature has also determined that, "[t]own boards must first adopt a resolution

determining that the levy of fees will fairly distribute the costs of the authority's activities

among persons and business benefited thereby and will not impose an undue burden on any particular group of persons or businesses."  (C.R.S. 29-1-204.5 (2)(e)(I))

9.  In enacting amendments to Title 5 in accordance with Ordinance 02-22, Defendant relied on *Colorado Union of Taxpayers Foundation v. City of Aspen*, 418 P.3d 506 (2018), for the proposition that a charge is not a tax if the primary purpose of the charge is not to raise revenue for general governmental purposes.

10. In *Colorado Union of Taxpayers Foundation v. City of Aspen*, 2018 CO 36, the Colorado Supreme Court considered whether a $0.20 charge on paper bags is <u>a tax subject to the Taxpayer's Bill of Rights,</u> finding that "the primary purpose behind Aspen's charge is not to raise revenue; the primary  purpose of  the  charge is  to defray some  of  the  costs of a comprehensive regulatory  scheme aimed  at  improving  environmental  health  and safety through  a waste-reduction  program," and reached its conclusion, based in part, on a "study showing that the cost of subsidizing the recycling, collection, and disposal of plastic and paper bags in that market was $0.17 per bag. Aspen adjusted the cost to $0.20 based  on  its  distance  to  recycling  markets,  the  smaller  size  of  its  waste stream, and community input."  Upon information and belief, Aspen's power to regulate programs that support education and outreach on environmental sustainability was derived from C.R.S 31-15-711(J).

11. The City of Aspen is a home rule municipality whereas the town of Estes Park is a statutory town and, as such, merely has the authority granted it by state statute or by necessary implication.  Therefore, the Aspen case does not provide the statutory authority required for the Town to enact Ordinance 02-22.  Title 5 Chapter 5.20.120(a)(9) provides a blanket statement that the Impact Fee "are fees, not taxes, because each fee is collected

from each vacation home licensee for the primary purpose of defraying the costs of mitigating the impact caused by the vacation home when engaging in an activity that is subject to the fee in an amount reasonably related to the impacts caused by the activity and the amount expended to mitigate that impact; and, additionally, because the fee is collected and expended to the benefit of the fee payer." Plaintiffs will not receive any specific or particularized benefits from the Defendant as a direct result of paying the Impact Fee.

12. Title 5 Chapter 5.20.120(a)(4) provides:

"Vacation home rental operations rely on a sustained local workforce, which is essential not only to the vacation home rental operations directly but the tourism-based portion of the Town's economy as a whole, on which vacation home rental operations depend."

Title 5 Chapter 5.20.120(a)(5) provides:

"A fee on vacation homes is therefore appropriate both as a service to vacation home licensees to sustain a local workforce to their benefit, and also as part of a comprehensive regulatory program to defray the reasonable direct costs of vacation homes on workforce housing and the Town's workforce housing program."

13. Neither Title 5 Chapter 5.20.120(a)(4) nor Title 5 Chapter 5.20.120(a)(5) establishes any distinction between vacation homeowners who rent their homes for 30 days or less or vacation homeowners who rent their homes for 30 days or more and therefore is absent a rationale that duration has an impact on a sustained local workforce, the alleged concern Title 5, as amended, purports to address.

14. Placing a financial burden on only licensed vacation homeowners who rent their homes for 30 days or less is arbitrary as constructed. There is a lack of nexus between the

increased costs of services the Defendant must provide to STRs in relation to the impact on workforce housing due to STRs.  There is also no detailed plan for how the funds will be used to offset any type of increased costs the Defendant will incur in relation to workforce housing. There is also no benefit to those who have STRs as a result of paying the Impact fee.

15. Neither Title 5 Chapter 5.20.120(a)(4) nor Title 5 Chapter 5.20.120(a)(5) establishes any reason why the board felt that only vacation home owners that rent their homes for 30 days or less should solely bear the burden of the workforce housing problem when almost all businesses in the Estes Valley depend on a seasonal workforce that require housing. The board also did not explain or otherwise justify why the costs of creating the workforce housing fee wasn't distributed evenly over all business types that would benefit from additional workforce housing, such as hotels, gift shops, grocery stores, restaurants, vacation home owners that rent for 30 days or more, the Town itself, Rocky Mountain National Park and the like.

16. The Impact Fee also does not bear a reasonable relationship to the direct or indirect costs to the Town of providing the service or regulating the activity of licensed vacation homes and is not reasonably related to the specific government expenditure.

**VACATION HOME RENTAL (SHORT TERM RENTAL) FEE STUDY**

17. Title 5, as amended, states the "Vacation Home Rental (Short Term Rental) Fee Study ("Study") prepared by Root Policy Research and presented to the Board of Trustees on March 22, 2022 demonstrates that the continued operation of vacation homes rented 30 days or less have a detrimental impact on the availability of workforce housing within the Town, and quantifies the impact, as well as the funds required to address the impact, at

one thousand three hundred ninety dollars ($1,390.00) per vacation home per year. Accordingly, the continued operation of vacation homes will cause the Town to incur costs of addressing workforce housing needs." (Title 5.20.120).

18. The Defendant relied solely on this "Vacation Home Rental (Short Term Rental) Fee Study" prepared by Root Policy Research ("Root Study") when determining the amount of the Impact Fee. This study attempted to quantify the impact that STRs have on affordability and availability of housing options in the town of Estes Park.  The dollar amount was determined by attempting to calculate the "affordability gap" created by every 100 STRs.  The Root Study considers the impact STRs have on the actual value of homes but does not correlate this value with the actual increased costs to the Defendant for workforce housing (or anything else) due to any effect from STRs.  The Root Study does not tie the impact of STRs on housing prices to any actual expenditures by Defendant.  The Root Study does not analyze the impact of the Estes Valley becoming popular for other types of homeowners, such as full-time residents, retirees, second-home owners or long-term renters (30+ days).  The Root Study does not consider the effect of new STRs compared to existing STRs in terms of an effect on housing prices.  The Root Study does not consider the effect of Title 5 caps on STRs and general housing prices. The Root Study also does not find direct points of workforce housing impact or even consider other business types that require workforce housing for their employees. Despite the shortcomings of the Root Study in not considering or presenting any increased costs to Defendant due to STRs, the effect of existing STRs on workforce house, other business types that require workforce housing and the effect of any other type of home ownership options, Defendant enacted the Impact fee only on licensed vacation homes, including

those that existed prior to enactment of the Title 5, as amended.  There are not adequate standards and criteria to ensure the Impact Fee is rationally and consistently applied. There was no finding the Impact Fee balanced the needs of the public with the rights and legitimate expectations of individuals or small business owners who operate STRs.

19. The Root Study does not consider the financial impact of STRs, but rather applies an arbitrary fee only to STRs of $1,390 and builds the fee calculation based on the "typical" STR in Estes Park (defined as 2 bedrooms and 2 bathrooms rented 167 days per year at $366 per night generating $53,684 in revenue annually resulting in a 2.6% levy rate on a "typical" STR ($1,390/$53,684) but does not consider "atypical" tiny seasonal cabins like Plaintiffs' Cabin # 3 that is a one room 300 sq. ft. studio that at the time of the Root Study was rented 142 days at $163 per night and generated $23,222 in annual revenue, an effective 6% levy rate on Plaintiffs  ($1,390/$23,222)).  The Root Study does not cite any legitimate basis to levy an annual rate 115% higher on certain homeowners compared to other homeowners.  The Impact Fee is not proportional in nature or extent with the impacts of short-term vacation home use.

20. The Root Study is arbitrary and fails to provide the required nexus to the increased cost to the Town as noted in *Colorado Union of Taxpayers Foundation v. City of Aspen*, 2018 CO 36, and is absent how the Impact Fee, estimated to generate $710,290 in 2023, will lead to the "acquisition of housing units, construction of new units, purchase of deed restrictions on existing units, mortgage buydowns, and rent assistance programs;" and "to defray the costs to the Town of the foregoing," in part because the Root Study fails to consider the effect of new STR units compared to existing licensed vacation homes in

terms of an effect on housing prices to address the need for workforce housing within the Town.

## STATE INTEREST IN AFFORDABLE HOUSING

21. The General Assembly in the State of Colorado has found and declared that, [h]ousing is increasingly not affordable for essential workers" and that there is "simply not enough capital available to finance the middle-income workforce housing, leaving a damaging void of housing supply…".  (CRS 29-4-1101(a) and (d))

22. They have additionally suggested, "a mechanism is needed that will robustly increase the supply of affordable middle-income housing by raising large amounts of private sector capital to finance projects that can be placed into service quickly and efficiently."  CRS 29-4-1101(e)

23. They have declared that, "creation of the middle income housing authority is such a mechanism."  (CRS 29-4-1101(e))

24. They have also declared that "[i]ncreasing affordable rental workforce housing … is a matter of statewide concern." (CRS 29-4-1101(h))

## TITLE 5, AS AMENDED, AS IT PERTAINS TO PLAINTIFFS

25. Plaintiffs Richard Grigsby and Cheryl Grigsby are long-time permanent residents of the Town and tax-payers in the Town.  Plaintiffs Richard Grigsby and Cheryl Grigsby have resided full-time in the Town since 1997.  They own and have fully restored three antique cabins located on a 0.1-acre tract within the historic district of the Town.  Plaintiffs Richard Grigsby and Cheryl Grigsby have a management company called Rocky Mountain Memories, Inc. ("RMM") that manages the three cabins at issue and conducts Plaintiffs' lay hospitality ministry in the name of "This Mountain Life".  At the time of

purchase of the cabins in 2011 and throughout the restoration period, Plaintiffs were induced by Town policies to pursue a short-term vacation rental by owner business model.  Without the inducements, Plaintiffs would not have purchased the property or restored it for exclusive short-term uses only. Plaintiffs designed and RMM manages each cabin to be compatible with the neighborhood, in terms of building scale, mass, and character, with low-intensity, low scale, residential uses only. Plaintiffs' ten-year history of short-term rental operations have no complaints from neighbors.  They received a Town Business License in 2013 that covered all three cabins.  Plaintiffs rebuilt each cabin pursuant to Defendant-approved Short-term Residential building permits issued or extended on May 11, 2012 for Cabin #1, on April 13, 2016 for Cabin #2, and January 16, 2019 for Cabin #3.  Per the building permits, each cabin was recreated for less than 30 day residential rental purposes.  At the conclusion of each building permit,  Plaintiffs applied for, paid the requisite filing fees, and were granted annual Vacation Home Rental Licenses on each cabin.  ("Vacation home" means a residential dwelling unit that is rented, leased or occupied for accommodation purposes for compensation for terms of less than thirty (30) days, and includes any timeshare/fractional ownership without regard to occupancy length. See Title 5.20.020 Definitions).   The first Vacation Home License was issued in 2016 on Cabin #1 for $300.  By 2019 all three cabins were online and deriving short-term rental income.  By then, Plaintiffs were paying annual Vacation Home licensing fees on all three based on number of bedrooms:  $300 for Cabin #1, $300 for Cabin #2, and $250 for Cabin #3.  Plaintiffs completed the various town-required processes to obtain all necessary land use approvals, business permits, building permits, special use permits, certificate of occupancies, Vacation Home Licenses, and the like

prior to enactment of the Impact Fee amendment to Title 5. All of these processes required a significant investment of both time and money.  All of these processes were completed prior to the Defendant amending Title 5 to include the Impact Fee.

26.  On December 30, 2022, Plaintiffs put the Defendant on notice that they were protesting the amendment related to payment of the Impact Fee and requested a hearing.

27. On January 31, 2023, Plaintiffs applied and paid the 2023 Vacation Home License and Impact Fees for Cabins #1 ($300 + $1,390) and #2 ($300 + $1,390) "under protest and without prejudice." Plaintiffs paid the Vacation Home License fee for Cabin #3 ($250) but did not pay the Impact Fee $1,390 and requested a fair hearing and due process.

28. As a punitive action, two days later, on February 2, 2023, the Defendant revoked Plaintiffs' Vacation Home License on Cabin #3 and threatened criminal action if Cabin #3 was rented without a new valid Vacation Home License in alleged violation of Title 5, as amended (Chapter 5.20.110(f)).  The enforcement action is invalid as it was not based on a duly adopted law. In contrast to numerous other section of Title 5 (e.g., Title 5.20.070 – Violation for failure to obtain and maintain the business license; refuse to make payment to the Town of the business license fee; operate a business, profession, occupation or accommodation, without the applicable license; or fail to complete the application process; Title 5.20.080 -Revocation of license (which shall not apply to vacation homes); and Title 5:20.110 -Additional provisions for vacation homes), Title 5, as amended, does not provide a mechanism specific to failure to pay the Impact Fee and does not specify that any monetary penalties for unpaid fees will be deposited to support the "Workforce Housing Enterprise."

29. Currently, there is a moratorium on new vacation home licenses granted by Defendant. (Ordinance 16-21 enacted October 26, 2021) There is a significant waiting list for residents of the town in applying for the STR licenses.  By revoking Plaintiffs license two days after receiving a request for a hearing, Defendant has effectively shut down one-third of Plaintiff's small business, precluded a large portion of income for it and caused them immediate economic harm.  Revocation of the Vacation Home Rental License also interfered with reservations, including reservations made by out-of-state residents, that had already been made by guests who had booked to stay in Cabin #3 during the summer season of 2023.

30. In response to the immediate revocation of the Vacation Home Rental License for Cabin #3, Plaintiffs attempted to pay the Impact Fee on February 7, 2023, well within a typical 10 day or more grace period for reinstatement of a property right consistent with other Town registrations and fees.  (e.g., Title 5.20.80 – Revocation of License. If the business license fee is not paid in full within twenty (20) days of the date of the notice, the Town shall revoke the business license).  On February 9, 2023, Plaintiffs were informed that late-payment was not accepted and the Vacation Home Rental License could not be renewed and/or cured by late payment.

31. Given the above, it should come as no surprise that this vague and arbitrary law directed only to those licensed vacation homeowners who rent for less than 30 days far exceeds in scope and severity the financial burden imposed on any other type of vacation homeowner or business owner within the Town.

## THE PARTIES

32. Richard Grigsby and Cheryl Grigsby, each a Plaintiff, are residents, property owners, and tax payers in the town of Estes Park, Colorado.  Rocky Mountain Memories, Inc. is a Colorado corporation with a mailing address of 1950 Cherokee Dr, Estes Park, Colorado 80517 and the manager of real property in the town of Estes Park, Colorado.

33. Defendant, town of Estes Park, is a statutory municipal corporation, organized to provide local governance for the town of Estes Park. It is a local government as defined by Colo. Const. art. X, § 20(2)(b).

## JURISCITION AND VENUE

34. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983 because Plaintiffs allege violation of their rights under the Constitution and laws of the United States.

35. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims arising under Colorado State Constitution because they are so related to the federal claims asserted in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

36. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. §2201 because the action presents an actual controversy within the Court's jurisdiction.

37. This Court has concurrent jurisdiction over federal constitutional claims as held in *Martinez v California*, 444 US 277 (1980).

38. Venue is proper under 28 U.S.C. § 1391 because the Defendant is located and resides in this judicial district and in the State of Colorado and because a substantial part of the

events giving rise to the claims for relief occurred in this judicial district, or in the alternative, because the Defendant is subject to personal jurisdiction in this district.

39. In this action for declaratory and injunctive relief, Plaintiffs seek to vindicate their rights as property owners and tax payers in the town of Estes Park, Colorado to be free from vague, arbitrary, and irrational government regulation violative of their rights to equal protection and due process of law.

40. Plaintiffs seek declaratory judgment that the Ordinance is unconstitutional on its face and as applied further entitling them to injunctive relief as to enforcement of the same.

41. Alternatively, Plaintiffs seek reinstatement of their STR license upon payment of such Impact Fee.

**OVERVIEW OF CLAIMS**

42. Plaintiffs bring this action under a variety of State and Federal Constitutional violations and seek to vindicate the rights of all property owners who rent their vacation homes for 30 days or less in the Town who are entitled to be free from vague, arbitrary, and irrational government regulation in violation of their rights to equal protection and due process of law.

**FIRST CAUSE OF ACTION**
**(Violation of State Preemption and Colorado Statutes)**

43. The Plaintiff repeat and reiterate each and every allegation set forth in Paragraph 1 through 42 above as if said allegations were fully and at length set forth herein.

44. Defendant is a Colorado statutory town and has long been a tourist destination. Statutory municipalities possess only those powers that are expressly conferred by statute or exist by necessary implication. (C.R.S. 31-15-103)

45. Statutory towns "shall have the powers, authority, and privileges granted by this title and by other law of this state together with such implied and incidental powers, authority, and privileges as may be reasonably necessary… All such powers, authority, and privileges are subject to the restrictions and limitations provided for in this title and in any other law of this state." C.R.S. 31-15-101(2).

46. Statutes that grant statutory towns powers are strictly construed and any doubt as to a statutory town's power must be resolved against it.  See *City of Aurora v. Bogue*, 489 P.2d at 1296; and *Estes Park Chamber of Commerce v. Town of Estes Park*, 199 P.3d 11.

47. Town boards must first adopt a resolution determining that the levy of fees will fairly distribute costs of the authority's activities among persons and businesses benefitted thereby and will not impose an undue burden on any particular group of persons or businesses.  C.R.S. 29-1-204.5 (2)(e)(I).

48. The Defendant has the power to make its own ordinances, however, the ordinances must not be inconsistent with the laws of the state of Colorado.  C.R.S. 31-15-103.  The Defendant's power to establish terms for business licensing fees, workforce housing authorities, and impact fees for capital facilities is limited.

49. The Ordinance is inconsistent with preempting Colorado statutory law regarding the establishment of capital facilities impact fees (C.R.S. 29-20-102 to 29-20-104.5), the establishment of workforce housing impact fees (C.R.S. 29-1-204.5), the municipal power to regulate business and occupations via licensing (C.R.S. 31-15-501(c)), and the legislative declarations on Regulatory Impairment of Property Rights (C.R.S. 29-20-201 et. seq.).

50. The Ordinance is also inconsistent with CRS 29-4-1102 that declares affordable housing for essential workers to be a statewide problem best suited for a statewide solution via creation of a middle-income housing authority that can increase the supply of affordable housing by raising large amounts of private sector capital to fund projects.

51. C.R.S. 29-20-104.5 limits the imposition of an impact fee to new developments only. The statute further requires that impact fees be applied to a broad class of property and that such a fee may only be imposed if it is intended to defray the expected impacts caused by the development.

52. Title 5, as amended, is inconsistent with controlling state law and thus the defendant is preempted from passing such an ordinance.

53. The statute requires that the impact fee be imposed upon a "broad class of property" however, short term rentals are not a broad class of property. They are a specific and small class of properties that exist within the Town.

54. Plaintiff's licensed vacation homes are not new nor under development, so pursuant to the language provided in C.R.S. §29-20-104.5, an impact fee cannot be applied to Plaintiff's property because the fee is not being imposed to defray or offset the expected impacts of a new development. The property at issue is not a proposed development, but one that has been owned and in use for several years prior to the passage of Title 5.

55. Impact fees, as defined by Colorado state law, are only ever applied when a new development is under consideration or construction. They have not been imposed on properties that have already paid all appropriate fees and taxes to the town in order to remain in operation.

56. The Defendant currently levies only one other impact fee, the Fire Protection Fee. This fee is directed to the Estes Valley Fire Protection District and is collected under and Intergovernmental Agreement. This Fire Protection Fee is specifically authorized by Colorado Statutes 29-20-104.5 and 32-1-1002(1) (d.5) for special fire protection, rescue, and emergency services districts such as the Estes Valley Fire Protection District. This Fee is an important distinction from the Impact Fee related to vacation homes because the Defendant is a statutory town and, as such, merely has the authority granted to it by state statute or by necessary implication.

57. "An individual private property owner should not be required, under the guise of police power regulation of the use and development of property, to bear burdens for the public good that should more properly be borne by the public at large." (C.R.S. 29-20-201 (2)).

58. "Increasing affordable rental workforce housing through the activities of the authority and the exercises of its plenary powers pursuant to this part 11 is in the public interest and is a matter of statewide concern." (C.R.S. 29-4-1102 (h)).

59. The Town's passage of the impact fee violates controlling Colorado state law because they are requiring a small class of private property owners to bear the burden of the workforce affordable housing crisis for the public good, instead of putting this burden on all property owners within the town.

60. Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## SECOND CAUSE OF ACTION
### (Violation of Colorado State Statute – Unconstitutional Taxation)

61. The Plaintiff repeat and reiterate each and every allegation set forth in Paragraph 1 through 60 above as if said allegations were fully and at length set forth herein

62. Taxpayer's Bill of Rights of the Colorado ("TABOR") as codified by Colo. Const. art. X, § 20, requires a vote of the people (Colo. Const. art. X, § 20(4)(a)) before the State or any local government may: create new debt, levy new taxes, increase tax rates, or institute tax policy changes directly causing a net tax revenue gain.

63. Defendant, a statutory town, is subject to TABOR's voting requirements because it is a local government that is authorized to levy taxes and that has levied a tax on licensed vacation homes.

64. The Impact Fee on STRs is a tax levied by Defendants and as such is subject to TABOR's requirement that a public vote be taken before it is enacted because it is a tax policy change resulting in a net revenue gain to the Town. Colo. Const. art. X, § 20(4)(a)

65. Before enacting Title 5, as amended, without a vote of the people, the Town violated TABOR and therefore Title 5, as amended, is unconstitutional.

66. Plaintiffs, and other similarly situated plaintiffs, have been forced to pay the unconstitutional tax on licensed vacation homes.

67. Plaintiffs are entitled to declaratory and injunctive relief to that effect.

### THIRD CAUSE OF ACTION
### (Violation of Equal Protection)

68. The Plaintiffs repeat and reiterate each and every allegation set forth in Paragraph 1 through 66 above as if said allegations were fully and at length set forth herein.

69. The Fourteenth Amendment to United States Constitution provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

70. Similarly, the Colorado Construction Article II, Section 25 provides "Due process of law. No person shall be deprived of life, liberty, or property, without due process of law." Colo. Const. art. II, § 25.

71. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall `deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982))

72. Title 5, as amended, treats similarly situated owners of residential property differently.

73. Pursuant to Title 5, as amended, only licensed vacation homeowners who rent their homes for less than 30 days must pay an arbitrary Impact Fee while those who rent for more than 30 days do not have to pay the Impact Fee, making the difference between the two groups based on as little as one day (30 days or less versus 30 days or more).

74. Regardless of the duration of rental period, the properties are used identically as single-family residences.  Therefore, the Impact Fee applies to the economic use of the property instead of the physical use of the property.

75. Title 5's distinction, as it relates to the Impact Fee, between vacation homeowners who rent more than or less than 30 days is arbitrary and has no rational basis.

76. The Defendant's disparate classification of vacation homeowners who rent for more or less than 30 days is a violation of the constitutional guarantee of equal protection under the Colorado State and the United States Constitution.

77. Additionally, Title 5, as amended, disparately treats vacation homeowners who rent for less than 30 days compared to vacation homeowners who rent their homes for 30 days or more and there is no legitimate government interest.

78. Vacation homeowners who rent their homes for 30 days or less and vacation homeowners who rent their homes for 30 days or more pay the same property tax rate, utility rates, and the like. There are no increased costs to Defendant due to the duration of the rental period.

79. The Defendant has no rational basis for requiring vacation homeowners who rent their homes for less than 30 days to pay the impact fee while not charging it to those vacation homeowners who rent their homes for 30 or more days or do not rent for compensation.

80. Plaintiffs (individuals who designed and rent their vacation home rentals for less than 30 days) and vacation homeowners who rent for more than 30 days that are excluded from paying the Impact Fee have a high degree of similarity and no rational person could regard the respective groups' circumstances different enough to justify differential treatment on the basis of a legitimate government interest.

81. Title 5, as amended, deprives Plaintiffs of their constitutional rights secured by the Equal Protection Clauses of the Colorado and United States Constitution by arbitrarily and irrationally denying equal protection of the law.

82. Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## FOURTH CAUSE OF ACTION
### (Violation of Substantive Due Process)

83. The Plaintiffs repeat and reiterate each and every allegation set forth in Paragraphs 1 through 81 as if said allegations were fully and at length set forth herein.

84. The Fourteenth Amendment to United States Constitution provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

85. Similarly, the Colorado Construction Article II, Section 25 provides "Due process of law. No person shall be deprived of life, liberty, or property, without due process of law." Colo. Const. art. II, § 25.

86. "A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . ." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); accord *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577–78 (1972).

87. The Fifth Amendment to the United States Constitution provides, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. Just compensation for a taking of private property was made applicable to the States through the Fourteenth Amendment. *Krupps v. Breckenridge Sanitation Dist*., 19 P.3d 687 (2001). See also *Chicago, B. & Q. R.R. Co. v. Chicago*, 166 U.S. 226, 239.

88. A "taking" under the Takings Clause, which is designed to assure that the government may not force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Krupps v. Breckenridge Sanitation Dist*., 19 P.3d 687 (2001). See also *Dolan v. City of Tigard*, 512 U.S. 374.

89. A taking unquestionably occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that

property. *Krupps v. Breckenridge Sanitation Dist.*, 19 P.3d 687 (Colo. 2001).  See also *Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 801 (Colo. 2002); *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.1993).

90. Private property ownership is a fundamental right in the United States.

91. Private property is an individual entitlement grounded in state law that cannot be removed except for cause. C.R.S. § 29-20-201(1).

92. The ability to lease property is a fundamental privilege of property ownership. *Terrace v Thompson* 263 US 197 (1923).

93. The rental of vacation home properties on a short-term basis is an established practice in the Defendant and also the entirety of the Estes Valley.

94. The right of due process prohibits arbitrary or irrational legislation affecting private property.

95. Title 5, as amended, requires that Plaintiffs who rent their vacation homes for less than 30 days to pay an Impact Fee, while others similarly situated who rent their homes for more than 30 days do not have to pay am Impact Fee.

96. A permit or license is nothing more than the permission or privilege to do what otherwise would be lawful.

97. The rental of property is a fundamental privilege of property ownership and would not otherwise be unlawful but for Title 5, as amended.

98. By requiring Plaintiffs, and others similarly situated who rent their vacation homes for less than 30 days, to pay the yearly Impact Fee, violates a core right of property ownership which includes the right to convey to others the right to use and occupy a property for an agreed upon term.

99. Title 5, as amended, by requiring Plaintiffs to obtain a vacation home license and pay an Impact Fee prior to renting out their vacation homes, impacts residents and out-of-state residents, infringes upon the fundamental right to use of private property, specific to any home that is not a permanent residence, in violation of the takings clause of the Fifth Amendment, incorporated by the Fourteenth Amendment to the United States Constitution. Homeowners, including Plaintiffs, who wish to use their homes for themselves or their families for part of the year, and rent it at other times, are prohibited from doing so, in violation of their property rights under the Fifth Amendment.

100.     Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## FIFTH CAUSE OF ACTION
### (Violation of Substantive Due Process)

101.     The Plaintiffs repeat and reiterate each and every allegation set forth in Paragraphs 1 through 99 as if said allegations were fully and at length set forth herein.

102.     The Fourteenth Amendment to United States Constitution provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

103.     Similarly, the Colorado Construction Article II, Section 25 provides "Due process of law. No person shall be deprived of life, liberty, or property, without due process of law." Colo. Const. art. II, § 25.

104.     The Fifth Amendment to the United States Constitution provides, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. Just compensation for a taking of private property was made applicable to the States

through the Fourteenth Amendment.  *Krupps v. Breckenridge Sanitation Dist.*, 19 P.3d

687 (2001).  See also *Chicago, B. & Q. R.R. Co. v. Chicago*, 166 U.S. 226, 239.

105.    A "taking" under the Takings Clause, which is designed to assure that the

government may not force some people alone to bear public burdens which, in all

fairness and justice, should be borne by the public as a whole.  *Krupps v. Breckenridge

Sanitation Dist.*, 19 P.3d 687 (2001).  See also *Dolan v. City of Tigard*, 512 U.S. 374.

106.    A taking unquestionably occurs when an entity clothed with the power of eminent

domain substantially deprives a property owner of the use and enjoyment of that

property. *Krupps v. Breckenridge Sanitation Dist.*, 19 P.3d 687 (Colo. 2001).  See also

*Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 801 (Colo. 2002); *City

of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.1993).

107.    Private property ownership is a fundamental right in the United States.

108.    Private property is an individual entitlement grounded in state law that cannot be

removed except for cause.

109.    The ability to lease property is a fundamental privilege of property ownership.

*Terrace v Thompson* 263 US 197 (1923).

110.    The rental of vacation home properties on a short-term basis is an established

practice in the Defendant and also the entirety of the Estes Valley.

111.    The right of due process prohibits arbitrary or irrational legislation affecting

private property.

112.    Title 5, as amended, requires that Plaintiffs who rent their vacation homes for less

than 30 days to pay an Impact Fee, while others similar situated who rent their homes for

more than 30 days do not have to pay am Impact Fee.

113.    A permit or license is nothing more than the permission or privilege to do what otherwise would be lawful.

114.    The rental of property is a fundamental privilege of property ownership and would not otherwise be unlawful but for Title 5, as amended.

115.    Plaintiffs paid for their Vacation Home Rental License for 2023 for Cabin #1, Cabin #2, and Cabin #3.  Plaintiffs, paid the Impact Fees for Cabins #1 and #2 on January 31, 2023 and requested a hearing with the Defendant to discuss the Impact Fee issue related to Cabin #3.  Defendant accepted the above-noted fees.

116.    On February 2, 2023, Defendant punitively revoked the vacation home rental license for Cabin #3 and threatened criminal enforcement action if it were to be rented without a vacation home rental license effectively shutting down one-third of Plaintiff's business.  Plaintiffs then tried to pay the impact fee on February 7, 2023 and were told on February 9, 2023 payment would not work to renew the vacation home rental license and/or "cure" the loss due to non-payment on January 31, 2023.

117.    Unlike other provisions of Title 5, Title 5, as amended, does not provide an enforcement provision related to the Impact Fee and allows the Town absolute discretion in arbitrary application.

118.    Unlike other provisions of Title 5, Title 5, as amended, does not provide a mechanism specific to failure to pay the Impact Fee and does not specify that any monetary penalties for unpaid fees will be deposited to support "Workforce Housing Enterprise."

119.    Plaintiff's Cabin #3, due to its extremely small size of approximately 300 sq feet, is unsuitable for any type of full-time housing, including workforce housing.

120.     If Defendant's revocation action is not set aside, Plaintiffs will suffer a net financial loss of approximately $30,000 and more per year beginning 2023 due to this small business being shut down. If Defendant's revocation action is not set aside, Defendant will suffer a net tax loss of approximately $3,200 ($1,550 in general sales tax + $600 in Local Marketing District tax + $1,050 Dedicated "6E" Workforce Housing and Childcare tax) and more per year beginning 2023 due to this small business being shut down. Revocation of the Cabin #3 Vacation Home License is irrational.

121.     Plaintiffs are a small family-owned business and the loss of this Vacation Home Rental License is a financial hardship for them.

122.     Title 5, as amended, and as applied to Plaintiffs revocation of its Vacation Home Rental License based on the payment of an Impact Fee prior to renting out their vacation homes, infringes upon the fundamental right of Plaintiffs to their use of their private property, in violation the takings clause of the Fifth Amendment, incorporated by the Fourteenth Amendment to the United States Constitution. Plaintiffs, wishing to use their homes for themselves or their families for part of the year, and rent it at other times, like other similarly situated homeowners, are prohibited from doing so, in violation of their property rights under the Fifth Amendment.

123.     Plaintiffs are entitled to declaratory and injunctive relief to that effect.

**SIXTH CAUSE OF ACTION**
**(Violation of Substantive Due Process)**

124.     The Plaintiffs repeat and reiterate each and every allegation set forth in Paragraphs 1 through 123 as if said allegations were fully and at length set forth herein.

125.     The Fourteenth Amendment to United States Constitution provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

126.     Similarly, the Colorado Construction Article II, Section 25 provides "Due process of law. No person shall be deprived of life, liberty, or property, without due process of law." Colo. Const. art. II, § 25.

127.     The Fifth Amendment to the United States Constitution provides, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. Just compensation for a taking of private property was made applicable to the States through the Fourteenth Amendment. *Krupps v. Breckenridge Sanitation Dist*., 19 P.3d 687 (2001). See also *Chicago, B. & Q. R.R. Co. v. Chicago*, 166 U.S. 226, 239.

128.     A "taking" under the Takings Clause, which is designed to assure that the government may not force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Krupps v. Breckenridge Sanitation Dist*., 19 P.3d 687 (2001). See also *Dolan v. City of Tigard*, 512 U.S. 374.

129.     A taking unquestionably occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property. *Krupps v. Breckenridge Sanitation Dist*., 19 P.3d 687 (Colo. 2001). See also *Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 801 (Colo. 2002); *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.1993).

130.     Private property ownership is a fundamental right in the United States.

131.     Private property is an individual entitlement grounded in state law that cannot be removed except for cause.

132.     The ability to lease property is a fundamental privilege of property ownership. *Terrace v Thompson* 263 US 197 (1923).

133.     The rental of vacation home properties on a short-term basis is an established practice in the Defendant and also the entirety of the Estes Valley.

134.     The right of due process prohibits vague, arbitrary, or irrational legislation affecting private property.

135.     Due process prohibits statutes that permit or encourage arbitrary or erratic enforcement, placing virtually unfettered discretion in the hands of enforcement authorities.

136.     Title 5, as amended, requires that Plaintiffs who rent their vacation homes for less than 30 days to pay an Impact Fee, while others similar situated who rent their homes for more than 30 days do not have to pay am Impact Fee.

137.     A permit or license is nothing more than the permission or privilege to do what otherwise would be lawful.

138.     The rental of property is a fundamental privilege of property ownership and would not otherwise be unlawful but for Title 5, as amended. C.R.S. § 29-20-201.

139.     Plaintiffs timely applied and paid for their Vacation Home Rental License for 2023 for Cabin #1, Cabin #2, and Cabin #3.  Plaintiffs, under contest, paid the Impact Fees for Cabins #1 and #2 on January 31, 2023 and requested a hearing with the Defendant to discuss the Impact Fee issue related to Cabin #3.  Defendant accepted the above-noted fees.

140.     On February 2, 2023, Defendant punitively revoked the vacation home rental permit for Cabin #3 and threatened criminal enforcement action if it were to be rented without a vacation home rental permit effectively shutting down one-third of Plaintiff's business.  Plaintiffs then tried to pay the Impact Fee on February 7, 2023 and were told on February 9, 2023 payment would not work to renew the vacation home rental permit and/or "cure" the loss due to non-payment on January 31, 2023.

141.     Unlike other provisions of Title 5, Title 5, as amended, does not provide an enforcement provision related to the Impact Fee and allows the Town absolute discretion in arbitrary application.

142.     Unlike other provisions of Title 5, Title 5, as amended, does not provide a mechanism specific to failure to pay the Impact Fee and does not specify that any monetary penalties for unpaid fees will be deposited to support "Workforce Housing Enterprise."

143.     Plaintiff's Cabin #3, due to its extremely small size of approximately 300 sq feet, is unsuitable for any type of full-time housing, including workforce housing.

144.     Plaintiff's Cabin #3 generates approximately $30,000 in revenue during each tourist season in Estes Park.

145.     Defendant will suffer a loss of approximately $1200 in 2023 Local Marketing District workforce housing lodging tax and $1550 in general sales tax due to this small business being shut down.

146.     Plaintiffs are a small family-owned business and the loss of this Vacation Home Rental License is a financial hardship for them.

147.    Plaintiffs completed the various town-required processes to obtain all necessary land use approvals, development approvals, building permits, special use permits, business permits, STR licenses, Certificate of Occupancies, and the like prior to enactment of the amendment to Title 5.  Plaintiffs were induced by Town policies at the time to purchase and restore what was then completely damaged, unproductive, unsafe/ unhealthy property, not fit for occupancy of any kind, into a short term rental retreat.  All of these processes required a significant investment of both time and money.  All of these processes were completed prior to the Defendant amending Title 5 to include the Impact Fee.

148.    The selection of only charging the Impact Fee to vacation homeowners who rent for less than 30 days is entirely arbitrary.

149.    Title 5's application, including payment of the Impact Fee, only to vacation homeowners who rent for 30 days or less is not supported by any reasonable or legitimate purpose.

150.    Upon information and belief, the loss of the vacation rental home permit for Cabin #3 will result in a loss of approximately $30,000 in revenue for Plaintiffs.

151.    Title 5, as amended, and as applied to Plaintiffs revocation of its Vacation Home Rental License based on the payment of an Impact Fee prior to renting out their vacation homes, infringes upon the fundamental right of Plaintiffs to their use of their private property, in violation The Takings Clause of the Fifth Amendment, incorporated by the Fourteenth Amendment to the United States Constitution. Plaintiffs, wishing to use their homes for themselves or their families for part of the year, and rent it at other times, like

other similarly situated homeowners, are prohibited from doing so, in violation of their property rights under the Fifth Amendment.

152.　　Title 5, as amended, and as applied to Plaintiffs revocation of its Vacation Home Rental License based on the payment of an Impact Fee prior to renting out their vacation homes Title 5, as amended, upsets Plaintiffs' reasonable investment backed expectations in acquiring their three properties in reliance on the Town regulations resulting in unanticipated and unsustainable losses, infringes upon the fundamental right of Plaintiffs to use their private property to obtain financial benefit therefrom, in violation of the takings clause of the Fifth Amendment without just compensation, incorporated by the Fourteenth Amendment to the United States Constitution.

153.　　Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## SEVENTH CAUSE OF ACTION
### (Violation of Commerce Clause)

154.　　The Plaintiffs repeat and reiterate each and every allegation set forth in Paragraphs 1 through 152 as if said allegations were fully and at length set forth herein.

155.　　The Commerce Clause of the United States Constitution gives Congress the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes," effectively gives Congress the broad power to regulate interstate commerce and restricts states from impairing interstate commerce. U.S. Const., art 1, § 8, cl 3.

156.　　The dormant Commerce Clause is an implicit restraint on state authority to regulate interstate commerce, even in the absence of a conflicting federal statute. U.S. Const. art. 1, § 8, cl. 3.

157.     Two primary principles mark the boundaries of a state's authority to regulate interstate commerce under the dormant Commerce Clause: a state may not discriminate against interstate commerce and may not impose undue burdens on interstate commerce. *Hignell-Stark v. City of New Orleans*, 46 F.4th 317 (2022)

158.     The ability to lease property is a fundamental privilege of property ownership. *Terrace v Thompson* 263 US 197 (1923).

159.     Plaintiffs, prior to amendment of Title 5, as amended, entered into contractual relationships with out-of-state rental guests for the beneficial use of the property by Plaintiffs.

160.     Title 5, as amended, requires payment of an Impact Fee and Vacation Home Rental License fee yearly if a vacation homeowner rents 30 days or less but not if the homeowner rents for 30 days or more.

161.     As a punitive action, on February 2, 2023, Defendant revoked Plaintiffs' Vacation Home License on Cabin #3 and threatened criminal action if Cabin #3 was rented without a new valid Vacation Home License in alleged violation of Title 5, as amended (Chapter 5.20.110(f)).  The act of Defendant revoking Plaintiffs Vacation Home Rental License impaired Plaintiffs contractual relationships with out-of-state guests in violation of the dormant Commerce Clause because it prevented performance of the contracts with the out-of-state guests in violation of interstate commerce, which was not contemplated at the time of the offering by Plaintiffs, and was punitive in relation to local benefits.

162.     Title 5, as amended, retroactively upset Plaintiffs' settled contractual expectations concerning revenue and income and investment by out of state residents.

163.     Plaintiffs are entitled to declaratory and injunctive relief to that effect.

## EIGHTH CAUSE OF ACTION
### (Violation of Contracts Clause and Colorado State Statute)

164.     The Plaintiffs repeat and reiterate each and every allegation set forth in

Paragraphs 1 through 162 as if said allegations were fully and at length set forth herein.

165.     The Contract Clause of the United States Constitution provides that, "[no] state

shall … pass any … law impairing the obligation of contracts." U.S. Const., art 1, § 10.

166.     The Colorado Constitution provides that "[n]o . . . law impairing the obligation of

contracts . . . shall be passed by the general assembly." Colo. Const. art. II, § 11

167.     In construing the impairment of contracts clause of the Colorado Constitution, the

Colorado Supreme Court has looked to the decisions of the United States Supreme Court

interpreting the Contracts Clause of the United States Constitution. See *In re Estate of*

*DeWitt*, 54 P.3d 849, 858-59 (Colo. 2002)

168.     "The Contracts Clause restricts the power of States to disrupt contractual

arrangements." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018).

169.     The ability to lease property is a fundamental privilege of property ownership.

*Terrace v Thompson* 263 US 197 (1923).

170.     Plaintiffs, prior to amendment of Title 5, as amended, entered into contractual

relationships with rental guests for the beneficial use of the property by Plaintiffs.

171.     Plaintiffs have a contractual relationship with their management company that

leases and manages their properties.

172.     Title 5, as amended, requires payment of an Impact Fee and Vacation Home

Rental License fee yearly if a vacation homeowner rents 30 days or less but not if the

homeowner rents for 30 days or more.

173.     Prior to enactment of the amendment to Title 5 requiring payment of two annual

fees - a yearly Impact Fee alongside a yearly Vacation Rental Home License fee,

Plaintiffs had entered into contracts to rent out Cabin #3 for much of the summer season

of 2023.

174.     These contracts for bookings related to Cabin #3 were entered into months prior

to enactment of the Impact Fee by Title 5 as amended on March 22, 2022.

175.     Each of the contracts for vacation rental obligated Plaintiffs to rent Cabin #3 for

less than 30 days.

176.     Title 5, as amended, impaired Plaintiffs contractual relationships in violation of

the Contract Clause because it prevented performance and created unanticipated losses

and potential claims against Plaintiffs that were not contemplated at the time of the

offering by Plaintiff.

177.     Title 5, as amended, upsets Plaintiffs' settled contractual expectations concerning

their future revenue and income.

178.     The economic harm to Plaintiffs caused by retroactive application of the

immediate applicability of the amendment to Title 5, results in substantial financial

damage and loss to Plaintiffs, including rental income loss and property resale value loss

and related undue and unjust hardship.

179.     When Plaintiffs entered into their pre-enactment rental agreements, they could not

have reasonably foreseen that Defendant would impose an additional "fee" in the form of

a yearly impact fee on only certain properties in the Town – only those who rent for 30

days or less.

180.     Title 5, as amended, does not provide temporal limitations on its application or grandfather existing contracts for STRs to avoid any retroactive liability and impact under U.S. Const., art 1, § 10 and Colo. Const. art. II, § 11.

181.     The retroactive impairment of Plaintiffs contractual relationships by imposition of an Impact Fee is not rationally related to any legitimate public purpose.

182.     Defendant had a less restrictive means of serving its alleged goals to avoid retroactive impairment of contracts in violation of U.S. Const., art 1, § 10 and Colo. Const. art. II, § 11.

183.     While Statutory Towns have the power to make ordinances PROVIDED they are not inconsistent with the laws of the state of Colorado (C.R.S. 31-15-103), Title 5, as amended, restricts Plaintiffs well-established and settled property rights that existed before the laws adoption and is therefore in violation of Colo. Const. art. II, § 11.

184.     Plaintiffs are entitled to declaratory and injunctive relief to that effect.

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

1.     A declaration that Title 5, as amended, to include an Impact Fee is unconstitutional on its face and as applied to all homeowners in the Town rendering it void;

2.     A declaration that Title 5, as amended, to include an Impact Fee violates Plaintiffs' rights under the United States and Colorado Constitutions;.

3.     A preliminary and permanents injunction prohibiting Defendants from enforcing Title 5, as amended;

4.     Alternatively, Plaintiffs seek reinstatement of their Vacation Home Rental license upon payment of such impact fee;

5.     An actual award of damages to be determined at trial;

6.      An award of attorneys' fees, expert fees, and all other expenses reasonably incurred

        in the connection with this action;

7.      Such other relief as this Court deems just and proper.


/s/ Jennifer M. McCallum, Ph.D., Esq.
**Jennifer M. McCallum, Ph.D., Esq.**
The McCallum Law Firm, PC
Physical Address:
685 Briggs Street
Erie, CO 80516
Mailing Address:
P.O. Box 929
Erie, CO 80516
Telephone: (303) 828-0655
E-mail:  jennifermccallum@mccallumlaw.net
E-mail:  kaltman@mccallumlaw.net
Attorney for Plaintiffs Rick and Cheryl Grigsby
And Rocky Mountain Memories, Inc.