Exhibit A

## 5.20.010 - Business license.

(a) Each business, profession or occupation within the Town, which business, profession or occupation consists of the selling of goods, wares, merchandise or service; the performing or rendering of service for charge; the leasing, renting or furnishing of an accommodation; and the carrying on or engaging in any nonresidential business shall obtain and maintain a business license. Each business, profession or occupation conducted at a separate physical location, regardless of ownership, shall obtain and maintain a separate business license.

(b) Each individual accommodation unit or vacation home which is separately owned, including but not limited to a condominium unit, shall obtain and maintain a business license for the individual unit as provided in Section 5.20.030. An entity or company managing one (1) or more individual accommodation units or vacation homes, shall obtain and maintain a business license for the management business separate from the business license of the owner of the individual accommodation unit or vacation home.

(Ord. 1-91 §1(part), 1991; Ord. 19-91 §1(part), 1991; Ord. 18-93 §2, 1993; Ord. 20-01 §1, 2001; Ord. 4-04 §1, 2004; Ord. 19-07 §1, 2007; Ord. 28-07 §1, 2007; Ord. 02-09 §§1, 2, 2009)

(Ord. No. 01-16 , § 1, 1-26-2016; Ord. No. 07-18 §1(Exh. A), 11-27-2018)

## 5.20.020 - Definitions.

In this Chapter, the following words and phrases shall have the following meanings:

*Accommodation* means the rental, leasing or occupancy of an accommodation unit, individual accommodation unit, vacation home or bed and breakfast inn for a term of less than thirty (30) days.

*Accommodation site* means one (1) individual parcel of real property consisting of two (2) or more accommodations units that are all owned and managed by a person(s) or entity.

*Accommodation unit* means any room, mobile home, recreational vehicle, camp site, or other area in a visitor-serving facility that provides temporary lodging, such as any hotel, motel, guest house, apartment, dormitory, mobile home park, recreational vehicle park or campground, or any such similar place, to any person whom, for a consideration, uses, possesses, or has the right to use or possess such room, mobile home site, recreational vehicle site, camp site or other area for a term of less than thirty (30) days.

*Bed and breakfast inn* means a detached single-family residential dwelling accommodation that is operator-occupied or an on-site manager resides on the premises during the accommodation use.

*Building contractor* means a business, profession or occupation whose primary business is the physical construction of structures and their appurtenances, including but not limited to:

Acoustical contractor;

Air conditioning contractor;

Asphalt contractor;

Cabinets and cabinet makers;

Carpenter;

Caulking contractor;

Ceiling contractor;

Concrete contractor;

Counter tops contractor;

Demolition contractor;

Drilling and boring contractor;

Drywall contractor;

Electrical contractor;

Excavating contractor;

Fire system installation contractor;

Framing contractor;

General contractor;

Heating/mechanical contractor;

Home building;

Home improvement contractor;

House mover contractor;

Insulation contractor;

Landscape contractor;

Mason contractor;

Painting contractor;

Patio, deck, porch, building/enclosure contractor;

Paving contractor;

Plumbing contractor;

Remodeling and repairing contractor;

Road building contractor;

Roofing contractor;

Septic tanks and systems contractor;

Siding contractor;

Sprinkler system contractor;

Swimming pool contractor;

Tile/ceramic contractor; and waterproofing contractor.

*General business* means the carrying on or engaging in any business, profession or occupation within the Town, which business, profession or occupation consists of the selling of goods, wares, merchandise or services or the performing or rendering of service for charge; except the carrying on or engaging in an accommodation, building contractor, home business, or outdoor mobile food vending.

*Home business* means a business, profession or occupation conducted within or from a dwelling by a resident as an accessory use to the residential use of the dwelling, but it does not include a building contractor or accommodation.

*Individual accommodation unit* means any separately owned accommodation, such as a condominium unit, in an accommodation zoning district and within a structure containing multiple accommodation units, which is rented, leased or occupied for a term of less than thirty (30) days and is not a vacation home.

*Nonresident business* means a business, profession or occupation whose business premises is located outside the corporate limits of the Town but is otherwise subject to the terms of this Chapter.

*Outdoor mobile food vending* means a business conducted from a licensed vehicle which sells food and beverages to the public.

*Owner* means the person owning any business, profession, occupation or accommodation. In the event that the owner is a nonresident or cannot be located by the Town, the operator, manager or lessee of any such business, profession or occupation shall be deemed an owner for all purposes of this Chapter.

*Timeshare/fractional ownership* means a residential dwelling unit that is subject to or operates under any arrangement, plan, or design whereby occupancy rights to the dwelling unit are segmented over time, and the rights of occupancy by owners, lessees or holders (regardless of the form of ownership or the form in which the right to occupy is expressed) are recurring, either on a fixed schedule or a floating schedule, such that in any one (1) year a change or turnover of occupancy may occur four (4) or more times.

*Vacation home* means a residential dwelling unit that is rented, leased or occupied for accommodation purposes for compensation for terms of less than thirty (30) days, and includes any timeshare/fractional ownership without regard to occupancy length.

(Ord. 1-91 §1 (part), 1991; Ord. 19-91 §1(part), 1991; Ord. 18-93 §1, 1993; Ord. 11-94 §1, 1994, Ord. 15-97, 1997; Ord. 20-98 §1, 1998; Ord. 20-01 §2, 2001; Ord. 4-04 §1, 2004; Ord. 19-07 §1, 2007; Ord. 02-09 §§3, 4, 2009; Ord. 02-10 §1, 2010)

(Ord. No. 01-16 , § 1, 1-26-2016; Ord. No. 07-18 §1(Exh. A), 11-27-2018; Ord. No. 08-21 §5, 5-25-2021; Ord. No. 20-22 , §1(Exh. A), 12-13-2022)

5.20.110 - Additional provisions for vacation homes and bed and breakfast inns.

    (a)   Business license application requirements.

        (1)   A business license for a vacation home or a bed and breakfast inn has also been known as an annual operating registration or an operating permit. All such terms refer to the same approval, which is a license from the Town to conduct such activities, valid for a single year.

        (2)   Local representative.

            a.  Vacation homes. The application for a business license for any vacation home shall designate a local resident or local property manager residing within either the Estes Valley Recreation and Park District boundary or the Estes Park School District R-3 boundary, who can be contacted by telephone and is available when the vacation home is rented, regarding any violation of the provisions of this Section. The person set forth on the application shall be the representative of the owner for immediate violation resolution purposes with regard to the operation of the vacation home. The local representative may be the same person as the property owner but shall provide a different address than the vacation home where the homeowner shall reside while the vacation home operates.

            b.  Bed and breakfast inns. The application for a business license for any bed and breakfast inn shall designate the resident owner or on-site manager residing on the premises who can be contacted and is on the property twenty-four (24) hours per day when the bed and

breakfast is in operation, regarding any violation of the provisions of this Section. The person set forth on the application shall be the representative of the owner for immediate violation resolution purposes with regard to the bed and breakfast inn.

  (3) Acknowledgment of regulations. A business license for a vacation home or bed and breakfast inn shall not be valid unless the property owner, and the designated local contact described in paragraph (2), above (if different), sign the business license application acknowledging all applicable vacation home or bed and breakfast inn regulations.

  (4) License completion deadline. The Town Clerk issues registration packets upon finding that the business license application form is complete and, if the property is in a residential zone, that the property is eligible to proceed from any waitlist to licensure, based on the cap described in Subsection (b), below. All requirements of the registration packet, including successful completion of all required inspections, must be completed and submitted within ninety (90) days from issuance of the packet from the Town Clerk, except for the life safety inspection as described in paragraph (8) below. Registration packets not submitted and complete, as determined by the Town Clerk, within those ninety (90) days shall be void, as shall be the application itself. A new application may be made if this Section allows.

   a. Reapplication Fee. Where a home has been the subject of a void application for lapse of this ninety (90) day deadline, and another application is submitted for the same home within two (2) years of the lapse, in addition to the license fee a reapplication fee must be submitted with the reapplication which shall be equivalent to the business license fee for the vacation home or bed and breakfast inn as enumerated in Section 5.20.030, but not including the vacation home workforce housing regulatory linkage fee.

  (5) No more than one (1) business license shall be issued and effective in any given calendar year for each vacation home or bed and breakfast inn.

  (6) State sales tax license. A condition of issuance of the license shall be proof of a current sales tax license, provided by the applicant.

  (7) Compliance inspection. To be issued a license, a vacation home or bed and breakfast inn must first undergo and pass a compliance inspection to ensure compliance with this Code and the regulations of the Development Code.

  (8) Life safety inspection.

   a. Requirement. To be issued a license, a vacation home or bed and breakfast inn must first undergo and pass a life safety inspection or other required building inspection, as applicable, and receive a certificate of occupancy that allows for such use, such as described in Section 14.12.025 of this Code, section R327 of the International Residential Code as amended.

   b.

Deadlines. If no such certificate of occupancy has been issued at the time the Town Clerk issues the registration packet as described in paragraph (4) above, the following deadlines shall apply:

1. The applicant must request the life safety inspection building permit from the Building Division, in the form and manner set by the division, within thirty (30) days of the issuance of the registration packet from the Town Clerk.
2. Upon issuance of the life safety inspection building permit, the applicant must complete an initial life safety inspection within thirty (30) days.
3. The applicant must complete and pass a final life safety inspection and obtain a certificate of occupancy that allows for the proposed use within ninety (90) days of the initial life safety inspection.

c. Lapse. Failure to meet any of these deadlines shall automatically cause the application to lapse, and be void. A new application may be made if this Section allows.

1. Reapplication Fee. Where a home has been the subject of such a lapse, and another application is submitted for the same home within two (2) years of the lapse, in addition to the license fee a reapplication fee must be submitted with the reapplication which shall be equivalent to the business license fee for the vacation home or bed and breakfast inn as enumerated in Section 5.20.030, but not including the vacation home workforce housing regulatory linkage fee.

d. Early inspection. Nothing in this Section shall prevent an applicant from requesting, undergoing, or completing the life safety inspection or receiving the necessary certificate of occupancy before the application is made or the registration packet is issued.

(9) Neighbor notification. Prior to issuance of an initial or transferred annual business license for a vacation home or bed and breakfast inn, the owner or local representative shall be responsible for mailing a written notice.

a. Notice shall be mailed, with certificate of mailing or other method as approved by staff, to the owners of properties within one hundred (100) feet of the boundary of the subject property.
b. Notices shall provide property address and 24/7 hotline phone number.
c. Proof of mailing shall be provided to the Town Clerk prior to issuance of an initial or transferred annual business license.

(b) Residential zone vacation home cap.

(1) Vacation home licenses in residential zoning districts (designated for the purposes of this Section as zoning districts E, E-1, R, R-1, R-2, RE, and RM) shall be held at a maximum total ("cap") of three hundred twenty-two (322) licenses in effect at any given time. This cap shall be reviewed annually by the Town Board, in or near the month of April. Applications received at any time such that their approval would cause the cap to be exceeded shall be held and kept

on file in the order they are received and deemed complete by the Town Clerk's Office. Applications held on such list (the "waitlist") shall be issued during the calendar year as licenses may become available. However, notwithstanding the foregoing, only applications received and deemed complete by the Town Clerk's Office by October 12, 2021 shall be included in the waitlist and be eligible for a license. The Town Board intends to establish further provisions regarding applications for licenses for vacation homes in residential zoning districts received or deemed complete after that date. Until provisions to the contrary are established, no application for a license for a vacation home in a residential zoning district that was received by the Town Clerk's Office after October 12, 2021 shall be valid. Such applications shall be of no force or effect.

    (2)  Vacation homes in non-residential zoning districts (designated as all zoning districts except those enumerated in the preceding subsection) shall not be included in or subject to this cap.

(c)  Transfer of business licenses and changes to local representatives.

    (1)  Transfer.

        a.  Transferable licenses. An active license for a specific vacation home or bed and breakfast inn that is not residentially zoned or that has been operating continuously (by renewal, including any approved transfer) under the required license since prior to the October 18, 2021 effective date of Ordinance 13-21 of the Town of Estes Park shall be transferable to a different owner in accordance with procedures in this Code, including paragraph (3) below, and in the form and manner established by the Town Clerk's Office.

        b.  Other licenses. Licenses for vacation homes and bed and breakfast inns not addressed in subparagraph (a) above are not transferrable to any person upon sale or other transfer of ownership of the property. Upon such sale or transfer of ownership, the license shall terminate automatically and the new owner of the property shall apply for a vacation rental license if it wishes to continue the use of the property as a vacation rental. Such application shall be subject to any applicable waitlist.

    (2)  Not transferable to different home. A license assigned to a vacation home or bed and breakfast inn shall not be transferred to another location of the same or different ownership.

    (3)  Application required upon transfer. If the property owner changes during the annual period for which the vacation home or bed and breakfast inn has been licensed, and the license is eligible for transfer as described in paragraph (1) above, a new property owner of record must file an application to transfer the license into their name within thirty (30) days of transfer of ownership, and must ensure the vacation home or bed and breakfast inn is in compliance with all other Town regulations. Properly filing a complete application within such time shall automatically extend the license, under the new ownership, until such time that the Town acts on the transfer application.

      a. Transfer fee. An application to transfer a license must include a transfer fee payment equivalent to the business license fee for the vacation home or bed and breakfast inn as enumerated in Section 5.20.030, but not including the vacation home workforce housing regulatory linkage fee if that has already been paid for the home for the calendar year. The Town Clerk issues transfer registration packets substantially the same as described in Subsection (a)(4) above, which must be completed within the same deadline or the application shall similarly lapse. Any reapplication for transfer allowed by this Section would be subject to the same reapplication fee.

  (4) Notification of change in local representative. If the local representative changes during the calendar year, the property owner must notify the Town Clerk within fifteen (15) days of change, and must ensure the new local representative is knowledgeable of all applicable regulations for the vacation home or bed and breakfast inn.

(d) Renewal.

  (1) Business licenses for vacation homes in residential zoning districts that are deemed active as of December 31 in any given year shall have priority for renewal in the following calendar year over any new applications for business licenses for vacation homes in residential zoning districts, provided a renewal for said active registration is received and deemed complete and proper, all required inspections passed, and fees paid by January 31 of the renewal calendar year. Priority for renewal shall not otherwise be afforded, and shall not be afforded where an uncured violation of Town regulations for the vacation home is ongoing in the determination of the Town Clerk. When priority for renewal is not afforded, an application for renewal of a license for a vacation home in a residential zoning district shall be void, the term of the license shall expire of its own accord, and the license shall be considered automatically to have expired and terminated without any further action necessary by the Town.

  (2) Issuance of a license for a vacation home or bed and breakfast inn shall not constitute a zoning entitlement for a property's use therefor, nor shall absence of a license for a vacation home or bed and breakfast inn constitute removal or abrogation of a property's zoning permissibility for such use. However, both appropriate zoning permission and compliance and a valid current business license shall be necessary elements in order for operation as a vacation home or bed and breakfast inn to occur.

  (3) ==A business license for a vacation home or bed and breakfast inn must be renewed on an annual basis. A business license does not convey a right to continue operation as a vacation home or bed and breakfast inn in future years. When the term of an annual license expires, and the license has not been properly renewed, the license shall be considered automatically to have expired and terminated without any further action necessary by the Town. All==

provisions under this Section, including those describing priority for renewal, transferability of licenses, continuity of operations, and the residential cap, are subject to any future changes in state or local regulations.

   (e)  Operating requirements.

      (1)  General requirements apply. Vacation homes and bed and breakfast inns must comply with all other applicable Town regulations, including those found in the Estes Park Development Code and building codes and regulations adopted under <u>Title 14</u> of this Code.

      (2)  Postings.

         a.  Vacation homes and bed and breakfast inns in all zoning districts shall have a clearly legible notice posted on-site. The posted notice shall be provided by the Town at the time the registration packet is issued, shall be posted in a prominent location inside the vacation home or bed and breakfast inn prior to or during the compliance inspection, and shall remain posted in the same location for the duration of its use as a vacation home or bed and breakfast inn. The posted notice shall include standard contents as determined and approved by the Town Clerk.

         b.  Property line boundaries: Included in the posting, the property owner or local representative shall inform all occupants of property boundaries.

         c.  The property owner or local representative shall include in all print or online advertising the business license number in the first line of the property description.

         d.  Advertising shall accurately represent the allowed use of the property, including the maximum number of allowed occupants.

      (3)  Number. Only one (1) vacation home or bed and breakfast inn shall be allowed per residential dwelling unit. The number of vacation homes allowed on an individual lot of record may be limited, based on all regulations in this Code, the Development Code, and other regulations as may be applicable.

      (4)  Parking.

         a.  Minimum required off-street parking. Except in the CD Downtown Commercial Zoning District, the number of off-street parking spaces available to a vacation home or bed and breakfast inn shall not be less than two (2).

         b.  Maximum off-street parking—Residential zoning districts. The maximum number of vehicles parked off-street on the vacation home or bed and breakfast inn property, and not parked or stored in a fully enclosed garage, shall not exceed the number of bedrooms in the vacation home.

         c.  Maximum off-street parking—Non-residential zoning districts. Maximum parking for vacation homes and bed and breakfast inns in non-residential zoning districts shall be regulated according to the parking standards applicable to "hotel, small" as described in

Section 7.11(D) of the Estes Park Development Code.

(5) *Occupancy generally.* All vacation homes and bed and breakfast inns are subject to the occupancy limits adopted under Title 14, in addition to the maximums below. For the purpose of this Section, occupancy shall not be counted differentially on the basis of age or status. "Bedroom" and "sleeping room" are deemed equivalent terms to each other, and equivalent to a sleeping space pursuant to building codes adopted under Title 14. Kitchen facilities shall be limited to be consistent with single-family residential use. No kitchen facilities or cooking shall be allowed in guest rooms, sleeping rooms or bedrooms.

(6) *Occupancy for vacation homes.*

 a. Maximum occupancy in residential zoning districts: Eight or below. Except for nine-and-over vacation homes that may be approved and registered under the provisions of this Code via Large Vacation Home Review (LVHR) application, the maximum allowable occupancy for an individual vacation home in a residential zoning district shall be eight (8) occupants. Occupancy shall be further limited to a maximum of two (2) individuals per sleeping room plus two (2) individuals per vacation home.

 b. Maximum occupancy in residential zoning districts for large vacation homes. A residential structure with four (4) or more sleeping rooms may apply for Large Vacation Home Review (LVHR) approval as a "nine-and-over vacation home," in accordance with the procedure described in Section 5.1 of the Estes Park Development Code. The maximum occupancy in a nine-and-over vacation home in a residential zoning district shall be as specified in the LVHR terms of approval; provided that occupancy shall be limited to a maximum of two (2) individuals per sleeping room plus two (2) individuals per vacation home.

 c. Maximum occupancy in non-residential zoning districts. Occupancy shall be limited to a maximum of two (2) individuals per sleeping room plus two (2) individuals per vacation home in a non-residential zoning district. No overall maximum occupancy for a vacation home in a non-residential zoning district shall be applicable, provided that the vacation home is deemed to be in compliance with all building, fire, and health codes and that a valid business license is in effect.

(7) *Occupancy for bed and breakfast inns.*

 a. Maximum occupancy—Eight-and-under occupants. The maximum allowable occupancy shall be limited by a maximum of two (2) guests per bedroom plus two (2) guests. The maximum allowable occupancy for an individual bed and breakfast inn shall be eight (8) occupants.

 b.

Maximum Occupancy—Nine-and-over occupants. A residential structure with four (4) or more sleeping rooms may be permitted as a bed and breakfast inn if granted zoning approval by special review in accordance with the S2 procedure described in the Estes Park Development Code. The maximum occupancy in a nine-and-over occupant bed and breakfast inn shall be as specified in the special review approval granted by the Town Board; provided that occupancy shall be limited to a maximum of two (2) individuals per sleeping room plus two (2) individuals per bed and breakfast inn.

   c. One (1) bedroom must be assigned to the resident owner or on-site manager and therefore not added to the maximum occupancy calculations in paragraphs (7)a. and (7)b. above.

(8) Number of parties.

   a. Vacation homes in residential zone districts as those districts are defined in Subsection (b) above shall be rented, leased or furnished to no more than one (1) party at a time, occupying the vacation home as a single group. Owners of the vacation home shall not occupy the vacation home while a party is present. All occupants shall be registered by name on or before the time of the party's initial occupancy. The name registry shall be maintained by the property owner, local representative or manager, and shall be made available to the Town or any other appropriate regulatory entity upon request.

   b. Bed and breakfast inns may be rented, leased or furnished to one (1) or more parties.

(9) Vacation homes and bed and breakfast inns, whether new or existing structures, shall be subject to the exterior lighting requirements for new development as described in Section 7.9 of the Estes Park Development Code.

(10) Vacation homes and bed and breakfast inns shall be subject to the wildlife protection requirements as described in Chapter 7.20 of this Code.

(11) Vacation homes and bed and breakfast inns shall be subject to the requirements of the sign code of Chapter 17.66 of this Code, and shall obtain sign permits as required.

(12) Employee housing units, attainable housing units, and workforce housing units, as defined and regulated by the Estes Park Development Code, shall not be designated as vacation homes or bed and breakfast inns.

(13) Vacation homes and bed and breakfast inns shall not be allowed on residential lots of record containing an accessory dwelling unit as defined and regulated by the Estes Park Development Code.

(14) In the CD Downtown Commercial zoning district, bed and breakfast inns shall not be located on the ground floor of a building fronting on Elkhorn Avenue.

(15) Home occupations, as defined and regulated by the Estes Park Development Code, shall not be operated on the site of a vacation home, nor shall vacation homes offer ancillary services to guests. Home occupations may be operated on the site of a bed and breakfast inn. Bed

and breakfast inns may also offer limited ancillary services to guests, such as offering classes/workshops to guests, provided they are in character with residential use.

    (16) Meal service. Bed and breakfast inns may provide meal service to registered overnight guests.

    (17) The owner of a bed and breakfast inn, or the on-site manager employed by the owner, must reside on the premises at all times when the bed and breakfast inn is in operation.

    (18) Use of solid fuel burning appliances located outside the fully contained portion of the residential structure on vacation home and bed and breakfast inn properties, absent the presence and oversight of the property owner or designated local representative, is prohibited. Solid fuel burning appliances include but are not limited to fire pits, outdoor fireplaces, portable outdoor fireplaces, portable fire pits, briquette or pellet burning grills, or similar devices. Use of gas burning outdoor devices is not affected by this paragraph, but may be regulated by other state and local laws, such as the ordinances of the Town and the adopted fire code.

(f) Enforcement.

    (1) Violation. It is a violation of this Section for any owner, representative, guest or occupant of a vacation home or bed and breakfast inn to be convicted, including a plea of no contest, of a violation of Section 9.08.010 (disturbing the peace) of this Code, which violation occurs on the premises of the vacation home; to fail to collect and remit all required sales tax to the state due and owing for the leasing, rental or occupation of a vacation home or bed and breakfast inn; to fail to comply with any provision of this Section; or to fail to acquire and pay for a business license. The owner and the local representative of a vacation home shall be in violation of this Section if any guest or occupant of the vacation home violates any provision of this Code, including but not limited to Section 9.08.010 (disturbing the peace), the Estes Park Development Code, or any other applicable law, regulation, rule, or order issued by a competent governmental authority, or causes a nuisance as described in Title 8 of this Code, on the premises of the vacation home. The owner and the local representative of a vacation home or bed and breakfast inn shall be in violation of this Section if the vacation home or bed and breakfast inn does not fully and strictly comply with the provisions of this Section, including provisions which this Section references or notes that the vacation home or bed and breakfast inn is subject to. A violation under Section 5.20.070 pertaining to a vacation home or a bed and breakfast inn shall also be considered a violation of this Section and may be enforced as such. These are all strict liability offenses.

    (2) Remedies cumulative. Any action under this Section to enforce requirements for a vacation home or bed and breakfast inn may be in addition to any other enforcement action(s) permitted under this Section or under other federal, state or local laws, codes, or regulations.

    (3)

Property owners and local representatives shall be jointly and severally liable for all violations under this Chapter attributable to either. Remedies for a violation may also be sought against both a property owner and a local representative, cumulatively, where both are in violation of this Chapter.

(4) Where any violation is a continuing offense, each day that the violation continues shall be considered and held to be a separate and distinct offense.

(5) Fines.

   a. Any person who shall be convicted of their initial violation of this Section shall be fined two hundred fifty dollars ($250.00).

   b. Any person who shall be convicted of their second violation of this Section occurring within two (2) years of the initial violation shall be fined five hundred dollars ($500.00).

   c. Any person who shall be convicted of their third violation of this Section occurring within two (2) years of the second violation shall be fined one thousand dollars ($1,000.00).

   d. Any person who shall be convicted of their fourth or subsequent violation of this Section occurring within two (2) years of most recent prior violation shall be fined the maximum amount permissible under Chapter 1.20.

   e. Any person operating a vacation home or bed and breakfast inn without the applicable license, in violation of Section 5.20.070, shall be fined the maximum amount permissible under Chapter 1.20.

(6) Suspension and revocation. The Town may suspend or revoke the business license of any vacation home or bed and breakfast inn for violation of the provisions of this Section as follows:

   a. The Town Clerk, upon the receipt and verification of any violation of this Section, may give written notice to the owner or representative that a violation has occurred and warn of potential future suspension and revocation. The Town Clerk may delegate this authority to other Town staff, including a code enforcement officer.

   b. Upon the receipt and verification of any subsequent violation of the terms and conditions of this Section, within two (2) years of the date of a notice of violation and warning as set forth in subparagraph (6)a. above, the Town Clerk may issue a notice of suspension of the business license by giving written notice, by ordinary U.S. mail, to the owner or representative of the suspension of the license. The notice of suspension is appealable as described in paragraph (f)(7), below. If the notice is not appealed within the time afforded, or if the notice is upheld on appeal, the license shall thereby be suspended. Said suspension shall be for one (1) year from the date the suspension becomes final. The property may not be operated as a vacation home or bed and breakfast inn during the period of the suspension. The Town Clerk shall record the suspension with the county clerk and recorder.

      c. If a business license is suspended as described in subparagraph (6)b., then, upon the receipt and verification of any further violation of this Section either during the period of suspension or within two (2) years after reinstatement, the Town Clerk may issue a notice of revocation of the business license by giving written notice, by ordinary U.S. mail, to the owner or representative of the revocation of the license. The notice of revocation is appealable as described in paragraph (f)(7), below. If the notice is not appealed within the time afforded, or if the notice is upheld on appeal, the license shall thereby be revoked. Upon revocation of the license, the owner's right and privilege to conduct the business, profession, occupation or accommodation within the Town is terminated. No person may apply for a license for a vacation home or a bed and breakfast inn on the property subject to the revocation for a period of two (2) years from the date the revocation is made final. After such time, a new application may be made if this Section allows. The Town Clerk shall record the revocation with the county clerk and recorder.

(7) Appeal. Any owner or representative who wishes to appeal a notice of revocation or suspension of a license for a vacation home or bed and breakfast inn may request an administrative hearing by written notice delivered in person or by certified mail, return receipt requested, to the Town Clerk within fourteen (14) calendar days of the date of the notice. The Town Administrator, or the Town Administrator's designee, shall act as the hearing officer and shall hold a hearing on the appeal and determine whether or not a violation of this Section has occurred within the applicable time period to prompt the suspension or revocation, respectively. The hearing shall meet the standards of basic procedural due process. The owner or representative shall be entitled to present any evidence of compliance with the terms and conditions of this Section at the hearing. The hearing officer need not re-adjudicate any issue resolved at a previous hearing, or any issue that could have been resolved with a prior appeal. The decision of the hearing officer shall be final.

(Ord. No. 08-21 §2(Exh. A), 5-25-2021; Ord. No. 13-21 §1, 9-14-2021; Ord. No. 16-21 §2, 10-26-2021; Ord. No. 10-22 §2, 7-12-2022; Ord. No. 13-22 §1(Exh. B), 7-26-2022; Ord. No. 20-22 §1(Exh. A), 12-13-2022)

### 5.20.120 - Vacation home workforce housing regulatory linkage fee.

(a) *Findings*. The Board of Trustees finds as follows:

    (1) The purpose of this Section is to protect the public health, safety, and welfare of the people of the Town by perfecting a comprehensive regulatory program linking the operation of vacation homes with the need for and provision of workforce housing.

    (2) The Town has a program of applying Town funds to address workforce housing needs within Town limits, as set forth in Town policy.

    (3)

==The Vacation Home Rental (Short Term Rental) Fee Study ("Study") prepared by Root Policy Research and presented to the Board of Trustees on March 22, 2022 demonstrates that the continued operation of vacation homes has a detrimental impact on the availability of workforce housing within the Town, and quantifies the impact, as well as the funds required to address the impact, at one thousand three hundred ninety dollars ($1,390.00) per vacation home per year. Accordingly, the continued operation of vacation homes will cause the Town to incur costs of addressing workforce housing needs.==

   (4)   ==Vacation home rental operations rely on a sustained local workforce, which is essential not only to the vacation home rental operations directly but the tourism-based portion of the Town's economy as a whole, on which vacation home rental operations depend.==

   (5)   ==A fee on vacation homes is therefore appropriate both as a service to vacation home licensees to sustain a local workforce to their benefit, and also as part of a comprehensive regulatory program to defray the reasonable direct costs of vacation homes on workforce housing and the Town's workforce housing program==.

   (6)   The Town intends to establish such a vacation home workforce housing regulatory linkage fee ("fee") and apply the fee revenues to its workforce housing program. As calculated based on the Study, the fee will bear a reasonable relationship to the cost to the Town of permitting the continued operation of the vacation homes.

   (7)   The fee will be collected as part of the fee for a vacation home business license.

   (8)   The fee is not designed to, and will not, defray the general expenses of Town government, but rather is a charge imposed for the purpose of defraying a portion of the costs of the particular Town services and programs. All the revenues of the fee will support only those services and programs.

   (9)   Consistent with the determination of the Colorado Supreme Court in *Colorado Union of Taxpayers Foundation v. City of Aspen*, 2018 CO 36, that a charge is not a tax if the primary purpose of the charge is not to raise revenue for general governmental purposes, but is instead to defray some of the costs of regulating an activity under a comprehensive regulatory scheme, the charges imposed by the Town and its enterprise as authorized by this Section are fees, not taxes, because each fee is collected from each vacation home licensee for the primary purpose of defraying the costs of mitigating the impact caused by the vacation home when engaging in an activity that is subject to the fee in an amount reasonably related to the impacts caused by the activity and the amount expended to mitigate that impact; and, additionally, because the fee is collected and expended to the benefit of the fee payer.

   (10)   The consumer price index is a reasonable approximation of the change over time in nominal dollars of costs related to housing in Estes Park, and the U.S. Bureau of Labor Statistics recommends the U.S. City Average Consumer Price Index for use in escalator clauses.

(b) *Vacation home workforce housing regulatory linkage fee.*

(1) As part of the annual fee to secure an annual business license for a vacation home as described in Section 5.20.030, there shall be charged a vacation home workforce housing regulatory linkage fee beginning with the 2023 license year. The initial amount of the fee upon passage of this Section shall be one thousand three hundred ninety dollars ($1,390.00) annually per vacation home license for the 2023 license year.

(2) The amount of the fee shall be adjusted annually for inflation as calculated by the Town Clerk, based on the All Items Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average ("Index"), as published by the United States Bureau of Labor Statistics or successor federal agency. The Town Clerk shall use the Index for June 2022 as a baseline and update the fee annually based on the index for each successive June. The Town Clerk shall post notice of the new amount of the vacation home workforce housing regulatory linkage fee each year on the Town's website prior to accepting payment of the license fee for vacation homes for the following license year, and in no case later than January 1 of the year for which the license will apply.

(c) *Exemption for certain vacation homes in the outlying commercial (CO) zoning district.* If an applicant for license or renewal of a vacation home business license in the outlying commercial (CO) zoning district demonstrates to the satisfaction of the Town Clerk, in the form and manner and by the reasonable time established by the Town Clerk, and in the Town Clerk's reasonable judgment, (1) that the property became or would become a vacation home at a time when the Development Code permitted vacation homes in the CO zoning district but prohibited household living there, (2) that the property was not used for purposes of household living before becoming a vacation home, and (3) that the property has not been used for purposes of household living since becoming a vacation home, then the Town Clerk shall certify that the vacation home business license is exempt from the vacation home workforce housing regulatory linkage fee for the upcoming license year, and shall not charge this fee as part of that year's business license fee. Once the fee has been paid for a vacation home, however, the Town Clerk shall not issue any refund of the fee on the basis of this exemption.

(d) ==The vacation home licensee may pass the expected per-rental-night costs of the fee to its customers on a nightly basis by inclusion of a surcharge on each customer's bill.==

(e) All revenues from the fee shall be deposited in the workforce housing enterprise fund as described in Section 5.21.060. As described therein, the revenues from the fee shall be expended only to defray the reasonable direct and indirect costs of the following:

(1) The Town's workforce housing programs and policies, which may include but are not limited to acquisition of housing units, construction of new units, purchase of deed restrictions on existing units, mortgage buydowns, and rent assistance programs; and

(2) To defray the costs to the Town of the foregoing, including but not limited to, costs of staff and personnel required for the administration and enforcement of the regulatory program described in this Section.

( Ord. No. 02-22 §3, 3-22-2022)