IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.        1:23-CV-01349-SBP

RICHARD GRIGSBY,
CHERYL GRIGSBY, AND
ROCKY MOUNTAIN MEMORIES, INC.

    Plaintiffs,

v.

ESTES PARK, COLORADO, A COLORADO MUNICIPAL CORPORATION

    Defendant.

---

## REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS [ECF 13]

Defendant, Estes Park, Colorado, by and through its attorneys at Nathan Dumm & Mayer P. C., hereby submits its Reply in support of its Partial Motion to Dismiss with supporting authority as follows:

### FACTS NOT PLED IN COMPLAINT

Plaintiffs' Response is replete with facts that were not pled in the Complaint. This is improper in Rule 12(b)(6) motions practice, as "[t]he plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss." *In re Qwest Comm. Intern., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. Jan. 13, 2004).

That said, the additional allegations raised in the Response have no legal relevance to the federal claims pled by the Plaintiffs. For example, the Plaintiffs allege a whole series of new facts about other strains on the Town's housing supply, like a Town development negotiation that fell through and the increase in retirees living in Town. [ECF 16, p. 7 (discussing ARPA

grant and retired homeowners)]. These facts are clearly geared towards supporting Plaintiffs' equal protection claim, with Plaintiffs attempting to raise the inference that the Town's linkage fee does not address all of the problems associated with affordable housing. But the Equal Protection Clause does not demand that legislatures tackle every aspect of a problem all at once – rendering these new facts irrelevant.

While the Town would ordinarily ignore the presence of improperly pled factual allegations, for certain of Plaintiffs' claims, the new facts are intertwined with the only legal argument raised in defense of those claims. It is thus impossible in some circumstances not to comment on particular facts. The Town nonetheless requests the Court decline to allow Plaintiffs to amend their Complaint through their Response. But to the extent the Court finds it as difficult as the Town did to isolate arguments based on the original Complaint, consideration of any new facts does not change the outcome of this Motion.

As a final preliminary comment, Plaintiffs also seek leave to amend their Complaint if the Court deems it to be "factually incomplete." [ECF 16, p. 25]. This too is improper, as a party may not seek a new form of relief in a response or reply brief. D.C.COLO.LCivR 7.1(d). But in any event, there are no facts that would alter the viability of the constitutional claims pled in Plaintiffs' Complaint, again rendering Plaintiffs' procedural error moot as any amendment would be futile.

## LEGAL ARGUMENT

*i.     The Equal Protection Clause does not require a single piece of legislation wholly remedy a problem. (Third Claim for Relief)*

Although at times repetitive, Plaintiffs' defense in support of their equal protection challenge can seemingly be distilled down to two points: (1) because some vacationers choose to stay in Town for longer than thirty days, all residential properties are similarly situated, and (2) because the affordable housing problem is complex and multifaceted, a regulation addressing only the problems associated with short-term rentals cannot pass rational basis review. [ECF 16, pp. 13-14]. Both of these arguments run contrary to long-standing principles of equal protection.

Relying on evidence that does not exist, and certainly was not pled, Plaintiffs allege that the Town's rental market is unique and vacationers "often" stay in Town longer than thirty days, thus making all rental homes similarly situated for purposes of Title 5's linkage fee. [ECF 16, p. 13]. The Court should not get hung up on this alleged factual dispute, as the Town admitted that certain owners who choose to rent solely to vacationers longer than thirty days might "escape the fee." [ECF 13, p. 6]. But as already pled, the Equal Protection Clause does not demand "mathematical nicety" and the mere fact that a plaintiff can point to an imperfection is irrelevant since "perfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (internal citations omitted). Plaintiffs' conclusory allegation is therefore irrelevant.

Beyond this fundamental flaw, Plaintiffs' argument also fails to recognize an obvious *legal* distinction between short and long-term rental properties. For those homeowners who apply for and receive a short-term rental license, they are afforded the right to choose between offering short-term rentals, long-term rentals, or both. In contrast, those property owners without

3

a license are limited to offering long-term rentals. Thus, the Plaintiffs and other license holders are afforded a property right not available to other property owners, and with that right comes a corresponding fee recognizing the detrimental impact short-term rentals have on the Town's housing stock. Two properties afforded different legal rights and responsibilities cannot be similarly situated in all material respects, especially when the regulation at issue is based *specifically* on that legal distinction.

Plaintiff's second argument is that Title 5 lacks a rational basis because "the Town has not presented reasonable evidence that short term rental vacation homes *alone* have a detrimental impact" on workforce housing; rather, the problem is "complex." [ECF 14, p. 13 (emphasis added)]. The Town emphasizes the word "alone" because it signifies a classic error recognized in equal protection jurisprudence. Distilled to its core, Plaintiffs argue that because many issues affect affordable housing, including the lack of construction of new units and the loss of housing stock from wealthy second-home owners, it was irrational for the Town to address only one aspect of the problem, *i.e.*, short-term rentals. Yet the U.S. Supreme Court has consistently held that "a legislature need not strike at all evils at the same time or in the same way" and it is not unconstitutional to adopt a regulation "that only partially ameliorate[s] a perceived evil and defer[s] complete elimination of the evil to future regulations." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981). In the future, the Town may work to address zoning codes and second home ownership through regulation related to those issues. The fact that such legislative efforts are not currently underway does not make the Town's partial progress via the linkage fee on short-term rentals unconstitutional.

Plaintiffs' equal protection claim fails as a matter of law, regardless of whether the Court considers additional arguments raised for the first time in Plaintiffs' Response.

ii.  *The linkage fee does not constitute a takings under the Fifth Amendment. (Fourth Claim for Relief)*

As a threshold matter, the theory underlying Plaintiffs' takings claim appears to have changed from the Complaint to their Response. As pled in the Complaint, the alleged takings was the requirement that Plaintiffs "obtain a vacation home license and pay an Impact Fee prior to renting to their vacation homes…[which] infringes upon the fundamental right to use of private property…in violation of the takings clause…" [ECF 1, ¶ 99]. Based on the Complaint, the Town moved to dismiss on the basis that a linkage fee having no demonstrable effect on property value did not yield a viable regulatory takings claim. [ECF 13, p. 8]. Yet Plaintiffs seem to stray from this theory, both factually and legally, when discussing this claim for relief in their Response.

From a legal perspective, Plaintiffs make numerous assertions that they were "treated differently from others similarly situated" – an equal protection analysis that has no import to takings jurisprudence. [ECF 16, pp. 16, 18]. Plaintiffs also complain that they intentionally failed to pay the linkage fee for Cabin #3 with the hopes of triggering a hearing, the absence of which they complain about. [*Id.*, p. 19 ("How else does one contest something he or she feels is improper without requesting a chance to be heard on the issue?")]. Yet no procedural due process claim exists in this case, nor could a viable claim be brought, and any relevant takings analysis does not require a hearing on new legislation.  Indeed, while Plaintiffs indicate they wanted a

5

chance to be heard, they fail to set forth any law or procedural requirement demonstrating the Town needed to give them that opportunity or face a possible takings claim.

From a factual perspective, Plaintiffs seem to abandon their complaint about payment of the linkage fee generally, and instead focus solely on the lapse of the license for Cabin #3. [*Id.*, p. 16 ("Plaintiff alleges that there was a regulatory taking of the property on which Cabin #3 sits…")]. But Plaintiffs' Fourth Claim for Relief is not focused on Cabin #3, but rather is a much broader attack on the constitutionality of a linkage fee on certain types of property uses. [*See* ECF 1, ¶ 98 (alleging the linkage fee "violates a core right of property ownership…")].

The Town will focus its efforts on what was originally pled in the Complaint, in part because the lapse of the license for Cabin #3 is addressed more specifically in Plaintiffs' Fifth and Sixth Claims for Relief.

With that understanding in place, the analysis of the Fourth Claim for Relief remains relatively short. Plaintiffs offer no viable argument that the linkage fee represents a total regulatory taking, as the payment of a fee does not prohibit the use, transfer, or occupancy of any property. The fee thus does not amount to a complete deprivation of "all economically beneficial use," as required. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005).

The linkage fee also does not amount to a takings under the *Penn Central* factors. In response to the first factor, Plaintiffs claim the fee is "an additional burden on the profitability of their business," but that vague and conclusory argument could be made in response to *any* regulation passed by a governmental entity. [ECF 16, p. 18]. As outlined in the Town's Motion to Dismiss, a regulation's effect on profitability is insufficient by itself to sustain a taking under *Penn Central* because profitability is a speculative concept (especially where, as here, Plaintiffs

fail to even quantify that alleged loss). [ECF 13, p. 9 (citing *Andrus v. Allard*, 444 U.S. 51, 66 (1979)].

With respect to the second factor, reasonable investment-backed expectations, Plaintiffs concede that they "did not believe they would be free from future regulation but, instead, felt they would be free from unreasonable legislation…" [ECF 16, p. 19]. Respectfully, this is not an argument that should be given any weight. To the Town's knowledge, no court has ever found a takings under the *Penn Central* factors based on the subjective assessment and belief of a landowner that a regulation is "unreasonable." Plaintiffs simply fail to articulate any reliance or investment interests that were impaired by the linkage fee.

Finally, Plaintiffs challenge the nature of the Town's actions, stating that the revenue from the linkage fee is minimal in the context of the overall needs of affordable housing and that the Town had a development negotiation fall through. [ECF 16, pp. 19-20]. These arguments, better suited for a legislative forum, do not invalidate the Town's authority to regulate housing due to a shortage of affordable accommodations. *See Yee v. City of Escondido, Cal.*, 503 U.S. 519, 528-29 (1992) ("This Court has consistently affirmed that States have broad power to regulate housing conditions…").

      *iii.*    *Plaintiffs cannot sustain a takings of Cabin #3. (Fifth And Sixth Claims Relief)*

As referenced above, Plaintiffs' Fifth and Sixth Claims for Relief are directly related to Plaintiffs' failure to pay the linkage fee for Cabin #3 and the resulting lapse of a rental license for only that unit. [ECF 1, ¶¶ 116, 140]. In Plaintiffs' Response, the arguments in support of these two claims for relief seem to be a continuation, or are duplicative, of the arguments in support of

Plaintiffs' Fourth Claim for Relief. The Town will thus address all arguments relating to Cabin #3, regardless of where Plaintiffs placed them in the Response.

With respect to Cabin #3, Plaintiffs do attempt to assert a total regulatory takings, arguing that the lapse of a rental license for Cabin #3 deprives them of all economically viable use because they cannot dedicate it to any other useful activity. [ECF 16, p. 17]. This argument fails at the outset, however, as Plaintiffs are solely responsible for the lapse of their short-term rental license because they consciously chose to not pay the linkage fee, recognizing full well that Title 5's provisions would result in an automatic loss of the license. Indeed, in their Response, Plaintiffs seemingly admit that this was their strategy all along. [*See id.*, p. 18 ("Plaintiffs also did not agree with the validity of the enacted ordinance and had expected to have their day in court via their request for a hearing to discuss it.")]. Plaintiffs do not cite a case, nor is the Town aware of any, that permits a regulatory takings claim to proceed where a plaintiff consciously chooses not to comply with a regulatory scheme. This is further cemented by the fact that the Town's ordinances do not confer a multi-year license on short-term rentals; rather, a license expires and must be renewed each year in compliance with Title 5's regulations and fees. [ECF 13-1, p. 8, § 5.2.110(d)(3)].

Even if Plaintiffs' theory of a total regulatory takings could succeed, and even if the Court is willing to consider evidence outside the four corners of the Complaint, Plaintiffs' arguments still lack merit. Plaintiffs argue that Cabin #3 is unmarketable for any other use besides short-term rentals because, among other things, it lacks a washing machine and Plaintiffs have declined to provide sufficient heat for the building in winter months. [ECF 16, p. 17]. As with other arguments raised in the Response, this one stretches the boundaries of what is

reasonable. Plaintiffs cite no case law establishing a total regulatory takings over a specific parcel of property where the plaintiff fails to provide basic elements of housing necessary to sustain human occupancy, like heat for a cabin in the mountains. Perhaps more importantly, nothing in Title 5 prevents Plaintiffs from modifying their property to accommodate additional uses, precluding the Plaintiffs from sustaining their position that Cabin #3 has been deprived of all economically beneficial use by the Town's regulatory measures.

Plaintiffs fare no better under a *Penn Central analysis*. Plaintiffs ignore the biggest problem, a lack of reasonable investment-backed expectations, and instead simply ask the Court to go look at the Complaint. [ECF 16, p. 21 ("As alleged in the Complaint, Plaintiffs had a reasonable investment-backed expectation.")]. That response is woefully insufficient, but Plaintiffs perhaps have no other available argument, as Title 5 very clearly spells out the risks associated with a failure to properly renew a short-term rental license. [ECF 13-1, p. 8, § 5.20.110(d)(3)("A business license for a vacation home or bed and breakfast inn must be renewed on an annual basis. A business license does not convey a right to continue operation as a vacation home or bed and breakfast inn in future years.")]. Plaintiffs cannot claim they had a reasonable investment-backed expectation in future renewals of their license for Cabin #3 given the clear and unambiguous terms of the Town's regulatory licensing scheme, which they intentionally refused to follow.

Plaintiffs also renew their attacks on the linkage fee in the context of Cabin #3, claiming the fee treats Plaintiffs different than others similarly situated and that it is "misdirected" given the affordable housing concerns in the Town. [ECF 16, p. 21]. As with its other claims, an analysis of similarly situated property owners has no relevance to any *Penn Central* factor. More

9

importantly, the linkage fee is not what caused Plaintiffs to lose their license for Cabin #3; rather, the loss of the license was due to Plaintiff's failure to comply with the Town's regulation governing renewal. As the Town articulated in its Motion to Dismiss, the renewal provision "appropriately balances the desire of existing licensees to continue operating their short-term rentals with the fact that the Town has a backlog of property owners who wish to rent on a short-term basis." [ECF 13, p. 15]. Plaintiffs offer no meaningful rebuttal to the Town's arguments, requiring dismissal of their Fifth and Sixth Claims for Relief.

      iv.      *The Town's linkage fee does not violate the Commerce Clause. (Seventh Claim for Relief)*

Plaintiffs appear to have conflated or comingled the Commerce Clause and Contracts Clause analyses, ending their Response on the Seventh Claim for Relief, instead of the Eighth. [ECF 16, pp. 22-25]. The last four pages of the brief include a stream of arguments that flow between both claims. Given Plaintiffs' failure to distinguish between these two claims, the Town will do its best to segregate the Commerce Clause analysis first.

Plaintiffs seem to maintain an argument that Title 5 contains discriminatory provisions in violation of the Commerce Clause, asserting that "Plaintiffs alleged general allegations throughout the Complaint of the discriminatory nature of Ordinance 02-22." [*Id*., p. 23]. But to discriminate under the Commerce Clause, there must be evidence that out-of-state residents are treated differently than in-state residents. *KT. & G Corp. v. Attorney General of the State of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008) ("In this context, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.") (internal citations omitted). Plaintiffs never allege that type of

discrimination, nor could they, as all tourists – regardless of their state of origin – can only rent from short-term rental operators who possess a license.

Beyond their conclusory statement of "discrimination," Plaintiffs do not provide any other legal support for their claim that Title 5's provision on the expiration of rental licenses constitutes a violation of the dormant Commerce Clause. [ECF 1, ¶ 161]. As set forth in the Town's Motion to Dismiss, a regulatory scheme that incentivizes the active use of a limited number of short-term rental licenses is a legitimate public purpose that is furthered by the expiration provision. [ECF 13, p. 15]. Because Plaintiffs do not argue or show otherwise, their Commerce Clause claim fails.

   v. *Plaintiffs have no cause of action under the Contracts Clause. (Eighth Claim for Relief)*

Adding to the confusion of comingling arguments on two constitutional claims, Plaintiffs' theory under the Contracts Clause seems to have morphed between the Complaint and their Response to the Town's Motion to Dismiss.

In the Complaint, Plaintiffs tethered their Contracts Clause claim to the linkage fee, alleging that "they could not have reasonably foreseen that Defendant would impose an additional 'fee' in the form of a yearly impact fee on only certain properties in the Town…" [ECF 1, ¶ 179]. But in their Response, Plaintiffs stray from this theory and instead allege that "[t]he immediate revocation of their license was a substantial impairment of their ability to perform under the contract with this guest." [ECF 16, p. 23]. Yet the "revocation" of their license occurred under a separate provision of Title 5, namely the provision governing license renewals. Plaintiffs do not allege that this requirement for annual renewal of a license was recently

promulgated by the Town such that it impaired existing contracts with its customers. Indeed, Plaintiffs pled no facts alleging that they entered into contracts with customers before adoption of the annual renewal requirement years ago that were then unable to be fulfilled. Largely because of this change in theory, a good portion of Plaintiff's Response on this claim can and should be discarded.

In a similar vein, Plaintiffs also claim that the ordinance interfered with contracts between the Plaintiffs and the Town, namely the existence of building permits and licenses. [ECF 16, pp. 24-25].[1] But in reviewing the entire Complaint, Plaintiffs never allege that the Town interfered with contracts between them and the Town; rather, the allegations are limited to "contractual relationships with rental guests for the beneficial use of the property by Plaintiff." [ECF 1, ¶ 170]. Plaintiffs cannot amend their claim on the fly in a vain attempt to counter arguments raised by the Town in a dispositive motion. And even if they could, the issuance of permits and licenses in Colorado does not give rise to contractual obligations, as they are issued pursuant to a municipality's police powers – not its authority to contract. *Patzer v. City of Loveland*, 80 P.3d 908, 911 (Colo. App. 2003) ("the issuance of a building permit is an exercise of the City's police powers…).

While it is difficult to determine what argument remains in support of Plaintiffs' original Contracts Clause claim, Plaintiffs do allege new facts in support of one five-day reservation that was a holdover from 2022. [ECF 16, p. 23]. Even if the Court were to consider this reservation, improperly raised in a response brief, it does nothing to show a violation of the Contracts Clause.

---

[1] Plaintiffs don't state whether they are referring to the linkage fee ordinance or the renewal ordinance, engendering further confusion.

Plaintiffs cannot plausibly allege that a *single*, *five-day* reservation for which the linkage fee was not contemplated created a "substantial impairment" as required to sustain a claim under the Contracts Clause. Indeed, Plaintiffs immediately abandon this reservation and instead claim the substantial impairment is the fact that "Plaintiffs had the expectation that they would have the chance to contest the ordinance after it became effective in 2023…" [*Id.*]. But Plaintiffs' subjective (and unreasonable) belief about challenging the linkage fee in 2023 has no bearing on any "substantial impact" analysis, nor do the Plaintiffs ever present a cogent argument on how the disparate parts of their factual and legal analysis combine together to form a cohesive claim under the Contracts Clause.

## CONCLUSION

For the reasons set forth in the Town's Motion to Dismiss and this Reply, Plaintiffs' federal claims should be dismissed with prejudice.

DATED this 29th day of August, 2023.

*s/Nick Poppe*
J. Andrew Nathan
Ashley Hernandez-Schlagel
Nicholas C. Poppe
NATHAN DUMM & MAYER P. C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

  I hereby certify that on 29th day of August, 2023 I electronically filed the foregoing **REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS [ECF 13]** using the CM/ECF system which will send notification of such filing to the following:

Jennifer M. McCallum, Ph.D., Esq.
The McCallum Law Firm, P.C.
685 Briggs Street
Erie, CO 80516
(303) 828-0655
jennifermccalum@mccallumlaw.net
katman@mccallumlaw.net
*Attorney for Plaintiffs*

                *s/Nick Poppe*
                J. Andrew Nathan
                Ashley Hernandez-Schlagel
                Nicholas C. Poppe
                Attorneys for Defendant
                NATHAN DUMM & MAYER P.C.
                7900 E. Union Avenue, Suite 600
                Denver, CO 80237-2776
                Telephone: (303) 691-3737
                Facsimile: (303) 757-5106
                ANathan@ndm-law.com
                ASchlagel@ndm-law.com
                NPoppe@ndm-law.com